## 17276

JOE C. KILGORE, Respondent, v. RESERVE LIFE INSURANCE COMPANY, Appellant

(97 S. E. (2d) 392)

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Appellant,*

*John K. Grisso, Esq.,* of Anderson, *for Respondent,*

April 1, 1957.

OXNER, Justice.

This is a suit to recover disability benefits under a policy insuring respondent, Joe C. Kilgore, "against loss of life, limb, sight or time resulting directly and independently of all other causes from accidental bodily injury sustained while this policy is in effect." It resulted in a verdict for respondent in the sum of $2,375.00, representing disability benefits, at the policy rate of $100.00 monthly, from the

date of the accident to the commencement of this action. The only question we need consider is whether the Court erred in refusing appellant's motion for a directed verdict upon the ground that the accidental injury suffered by respondent was not the sole cause of his disability. Appellant claims that he had a pre-existing arthritic condition "which contributed to or cooperated with the injury and caused the disability."

Respondent's occupation is that of textile worker. The policy involved in this action was issued on March 24, 1953. Respondent was then 59 years of age. On January 13, 1954, while working at the Orr Mill at Anderson, he slipped on a wet floor and fell on his back. Another employee assisted him in getting up. He was then taken to the office of a local physician. An $x$-ray of his back was made the following day. He was treated by several physicians. The severe pain in his back continued. Finally, in September, 1954, he was sent to Dr. Huff, an orthopedic surgeon of Anderson, and has since been under his care. Respondent was never able to resume his work at the mill. The evidence reasonably warrants a conclusion that he has been totally disabled since the accident.

Respondent was apparently in good health and worked regularly prior to the accident. He says that his back had never given him any trouble before and that he was unaware of any arthritic condition or other infirmity.

The only other witness in the case was Dr. Huff. He says that his examination disclosed "arthritic changes in the whole lumbar region", and that "there were marks on the fifth lumbar space and what appeared to be degenerated impetigo disc and arthrosteitis at that level." It was his opinion that this arthritic condition was of long duration and the accidental injury probably caused the arthritis to "flare up". He further testified:

### Direct Examination

"Q. Now, if Mr. Kilgore's testimony shows that back at the time he was working in the mill he had been working every day and did not have any trouble with his back, and assuming he did not fall, would he still be able to work, in your opinion, or not? A. I know of no reason why he would not be working. He had been working every day and I don't see why he shouldn't be able to work. I know of no other reason.

"Q. What, in your opinion, caused the trouble that Mr. Kilgore had when you examined him—what caused his trouble? A. Well, it is alleged he had a fall in the mill, and I think the fall, plus the pre-existing osteoarthritis, was the trouble. The fall simply set the arthritis off.

"Q. Then what disabled this man, the arthritis or the fall? A. (Didn't answer.)

"Q. In other words, he had been working up to the time he fell. A. I would say the fall disabled him.
"  *   *   * ."

### Cross Examination

"Q. The fall aggravated the arthritis, and the fall disabled him, and he is now suffering from arthritis, isn't that right, doctor, that is what you testified? A. The fall plus the aggravation.

"Q. You testified that he had an alleged fall, that is right, isn't it? A. Yes, sir.

"Q. And the arthritis aggravated it? A. Yes, sir.

"Q. And if he hadn't of had the arthritis he would probably have been back to work in a couple of weeks, isn't that right? A. Yes, sir.

"Q. So the pain and suffering was brought about by the arthritis, that's right, isn't it? A. Yes, sir, but let me bring this point up: He could have gone on a long time without his arthritis flaring up probably.

"Q. He could have and he couldn't have, doctor, you don't know, do you? A. Nobody knows for certain.

"Q. And what you said then was purely speculation on your part, isn't it, doctor—purely speculation? A. Yes, sir.

"Q. As a matter of fact, Mr. Grisso asked you about if this man hadn't had a fall and he continued his work there was some question as to whether he would be in the condition that he is now. Without a fall, doctor, you can't say that he wouldn't be in the same condition that he is today, could you—if he had no fall at all you couldn't say with any degree of accuracy whether he would have his position today or not, could you? A. Nobody can.

"Q. If a man is advanced in years and he has arthritis he could become disabled at any point in life, couldn't he? A. Yes, sir.

" * * *

"Q. Arthritis is an old person's disease, that is correct, isn't it? A. Yes, sir.

"Q. You expect to see it in people from about forty-five to fifty and on and you occasionally see it in young people, is that correct? A. Yes, sir.

"Q. And you have seen x-ray pictures of it in normal people, haven't you? A. Yes, sir."

At the conclusion of respondent's testimony, counsel for appellant stated that since the medical testimony they contemplated offering would be to the same effect as that given by Dr. Huff, they would offer no testimony.

It is appellant's position that the only reasonable interference warranted by the foregoing testimony is that respondent's alleged disability was caused partially, if not wholly, by his arthritic condition. It is accordingly contended that the Court erred in not granting its motion for a directed verdict on this ground. It is further argued that even if the testimony warrants an inference that the accidental injury caused disability for several weeks, any disability thereafter could certainly not be said to be due solely to the accidental injury. In other words, it is contended that in no event could disability benefits be allowed for more than two or three weeks. We do not agree.

We think the question of recovery for the full period sought was properly submitted to the jury.

The fact that prior to the accident respondent worked regularly and did not suffer from arthritis or any other physical infirmity but immediately thereafter became, and has since been, disabled is some evidence in itself that the fall caused his disability. *Ballenger v. Southern Worsted Corporation,* 209 S. C. 463, 40 S. E. (2d) 681. This was a workmen's compensation case. The employee claimed that his eyesight was impaired by an accident whereby the contents of a dye kettle erupted, causing a hot liquid chemical to be thrown into his eyes. He testified that his vision was good prior to the accident. The only medical testimony was to the effect that claimant's impaired vision was caused by astigmatism and that the accident had no injurious effect. The Court held that the medical testimony was not conclusive and the question of proximate cause was for the triers of the facts. It was there stated: "Legal proximate cause is determined upon mixed considerations of logic, common sense and experience, policy, and precedent."

The testimony of Dr. Huff is to some extent conflicting and subject to more than one reasonable inference. It clearly warrants a conclusion that except for the accidental injury, respondent might "have gone on for a long time without his arthritis flaring up." It cannot be said as a matter of law that he could not have continued working for two more years, the period for which recovery has been allowed. The jury could have concluded from Dr. Huff's testimony that the arthritic condition was dormant and only became active because of the accident. Such a conclusion would warrant recovery. In Appleman, Insurance Law and Practice, Volume I, Section 403, page 499, it is stated: "The courts have been particularly quick to permit recovery where the diseased condition was a latent one, which might never have caused loss without the occurrence of the accident." Also, *see Scanlan v. Metropolitan Life In-*

surance Co., 7 Cir., 93 F. (2d) 942; *Prudential Insurance Co. of America v. Carlson*, 10 Cir., 126 F. (2d) 607; 29 Am. Jur., Insurance, Section 996.

In order to recover under a policy of this kind, the law does not require that the insured be in perfect health at the time an accident occurs. *Graham v. Police & Firemen's Ins. Ass'n*, Wash., 116 P. (2d) 352. In *Silverstein v. Metropolitan Life Ins. Co.*, 254 N. Y. 81, 171 N. E. 914, 915, Chief Judge Cardozo said: "A policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or a Hercules."

In *Langeberg v. Interstate Business Men's Acc. Ass'n*, 57 S. D. 226, 231 N. W. 930, insured, a carpenter, received a blow on his abdomen as a result of a fall. Immediately thereafter and for some time, he suffered from stomach hemorrhages. It was shown that he had a pre-existing gastric ulcer. In holding that it was a question for the jury as to whether loss of time resulted from the accidental injury "independent of all other causes", the Court said:

"It is to be kept in mind that this is an action to recover, not for death, but for loss of time resulting from the accident. Even if a gastric ulcer existed, it had caused plaintiff no inconvenience up to the time of the accident; he had no reason to even suspect it existed. But for the accident he might have gone on working as before, unaware of the ulcer until death overtook him from a natural cause entirely dissociated from the ulcer. Had it not been for the accident he might have lived out his life and never lost any time from work. With that possibility may it not be said that the accident was the sole cause of the loss of time resulting from the injury?"

In *National Life & Accident Insurance Co. v. Upchurch*, 57 Ga. App. 399, 195 S. E. 588, the Court permitted recovery upon a policy of this kind where insured died from arthritis which prior to the accidental injury was dormant but "flared up" as a result of such injury.

*LaBarge v. United Insurance Co.,* Or., 303 P. (2d) 498, 501, decided November 14, 1956, is apposite. There the insuring clause was substantially the same as that contained in the policy before us. The insured's right shoulder was injured as a result of a fall, causing considerable pain and impairing his ability to carry on his work at a shingle mill. Several weeks later his condition became worse and the symptoms spread to other parts of the body, including the left shoulder. His physician diagnosed the ailment as rheumatoid arthritis and osteoarthritis and said that this condition must have been present prior to the accident, although it had caused no difficulty. He explained that it became active when "triggered off" by the fall. Insured was unable to resume his previous work and sought recovery for the disability benefits provided in the policy. The insurer contended that it was not shown that the accidental injury was the cause of plaintiff's disability "independently of all other causes", claiming that the plaintiff's pre-existing arthritic condition operated as a contributing cause. In affirming a judgment for the recovery of disability, the Court said:

"That contention must be resolved adversely to the defendant. *Todd v. Occidental Life Insurance Co. of California,* Or., 303 P. (2d) 492, this day decided by us under a policy of insurance substantially similar to the one involved here, held that it was a question for the jury as to whether or not osteoarthritis, with which the insured in that case was afflicted, was a causal factor in the disability which he suffered after an accident befell him. Plaintiff LaBarge has been disabled by rheumatoid arthritis, which, but for the accidental injury, would not have impaired his ability to work in any manner. In the light of such facts, the determination of the jury that the arthritic condition was not an 'other cause' of the disability will not be disturbed."

By reference to the case of *Todd v. Occidental Life Insurance Company,* referred to in the above quotation, it will be noted that the foregoing conclusion was reached

notwithstanding the fact that the Supreme Court of Oregon had adopted the rules stated in *Penn v. Standard Life Insurance Co.,* 160 N. C. 399, 76 S. E. 262, 42 L. R. A., N. S., 597, which is one of the cases principally relied on by appellant in the instant case.

We have carefully examined the cases cited in appellant's brief. Some of them are distinguishable on the facts. Others are contrary to the trend of modern authority.

Judgment affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.