18775

Sam GAMBLE, Respondent, v. TRAVELERS INSURANCE COMPANY, Appellant

(160 S. E. (2d) 523)

*James M. Morris, Esq.,* of Manning, *for Appellant,*

*Ralph F. Cothran, Esq.,* of Manning, *for Respondent,*

April 1, 1968.

Moss, Chief Justice.

This is an action brought by Sam Gamble, the respondent herein, against Travelers Insurance Company, the appellant herein, to recover death benefits under a life and accident insurance policy issued by the appellant on April 1, 1963, with Albertus Conyers as the insured therein named, and the respondent as the beneficiary therein named.

It is alleged in the complaint that the appellant issued its group life insurance policy, with an accidental injury and death provision therein, to Humble Oil and Refining Company and thereby insured the lives and health of certain marketers and their employees. It is also alleged that the respondent, as a marketer, duly qualified one Albertus Conyers, an employee, as an insured under the life and accident provisions of said policy, entitling said employee to the various benefits set forth in said policy and entitling the respondent, upon the death of the insured by accidental means, to recover the accidental death benefits payable under said group policy. It is then alleged that on April 27, 1965, while the said policy was in full force and effect, the said Albertus Conyers died from accidental means entitling the respondent to recover the accidental death benefits payable under said policy.

The appellant demurred to the complaint upon the grounds that it failed to state facts sufficient to constitute a cause of action, in that, (1) there is no allegation therein that a loss occurred within the provisions of the policy; and (2) there is no allegation that the insured died from accidental means resulting directly and independently of all other causes.

The demurrer was heard by the Honorable W. L. Rhodes, Jr., Presiding Judge, and he overruled such on the ground that the complaint does state a cause of action for death by accidental means. The appellant asserts that the trial judge erred in overruling the demurrer.

It is, of course, elementary that in passing on a demurrer the court is restricted to the facts as they appear in the complaint. *Hartford Accident & Ind. Co. v. South Carolina Ins. Co.*, 249 S. C. 120, 153 S. E. (2d) 124. The group insurance policy was not made a part of the complaint nor was such before the trial judge judge for consideration in deciding whether a cause of action was stated in the complaint. Although the allegations of the complaint are couched in general terms, liberally

construing such, we think the complaint states a cause of action for benefits accruing to the respondent as beneficiary under said policy by reason of the death of the insured by accidental means. It is alleged that Albertus Conyers "was covered under the provisions" of the policy and that he died from accidental means. While the complaint does not specifically state that death through accidental means is a "loss within the provisions of the policy", we think the allegations of the complaint, when liberally construed, fairly embrace such averment. The appellant asserts that the complaint was defective in failing to allege that the insured died "from accidental means resulting directly and independently of all other causes". Apparently the appellant is relying upon a provision or condition contained in the policy agreement and since the policy was not a part of the complaint it would have been improper for the trial judge to consider a condition or a provision of the policy in determining whether the foregoing allegation was necessary. Since the objection of the appellant to the allegations of the complaint does not appear upon the face thereof, such objection could not be taken by demurrer. The demurrer was properly overruled.

After the demurrer was overruled, the appellant filed an answer admitting that the policy had been issued and that Albertus Conyers died on April 27, 1965, but denied that benefits were payable under the terms of the policy, which policy was incorporated in the answer and provides in its pertinent part for benefits for bodily injury "effected directly and independently of all other causes through accidental means. * * *" "Exclusions:—The insurance under this Part shall not cover any loss (1) caused or contributed to by bodily or mental infirmity, disease or infection * * *, even though the proximate and precipitating cause of the loss is accidental bodily injury; * * *." The answer of the appellant alleged that the insured had an epileptic seizure or convulsion and that such caused or contributed to the fall that resulted in his death.

The case was tried at the Spring term of the Court of Common Pleas for Clarendon County before Judge Rhodes and a jury, resulting in a verdict for the respondent in the amount of the accidental death benefits payable under the policy. The appellant made timely motions for a nonsuit, directed verdict and, after the verdict, for judgment *non obstante veredicto* or, in the alternative, for a new trial. The respondent made a motion for a directed verdict in his favor on the ground that the testimony showed that the insured died as a result of an accident and there was no evidence to sustain the defense that such death was caused or contributed to by any bodily or mental infirmity, disease or infection. The trial judge overruled all of the foregoing motions and the appellant is here on several exceptions which, in addition to charging error in overruling the demurrer, asserts error on the part of the trial judge in submitting the case to the jury, in certain aspects of his charge, and in failing to declare a mistrial.

The burden of proof was upon the respondent to show the death of the insured by accident. *Coleman v. Palmetto State Life Ins. Co.,* 241 S. C. 384, 128 S. E. (2d) 699. From the evidence introduced in this case it is clear that there is no dispute as to the fact that the direct cause of the death of the insured was epidural hemorrhage due to a skull fracture. This being true, the burden of proof was on the insurer to establish that the injury or death was caused or contributed to by the disease of epilepsy and that such came within the exclusion clause of the policy. *Outlaw v. Calhoun Life Ins. Co.,* 238 S. C. 199, 119 S. E. (2d) 685. If the insured is afflicted with a disease or infirmity at the time an alleged accident occurs, which disease or infirmity causes or contributes to the death or injury resulting, such death or injury is not within the coverage of a policy which insures against death or bodily injury by accident or accidental means, independently of all other causes or which excepts death or bodily injury caused or contributed to by disease or infirmity.

The insured, 39 years of age, was an employee of the respondent and had worked at his filling station for a period of nineteen years and had not missed more than two weeks from his work during the period of employment.

It appears that on the night of April 26, 1965, the insured got out of bed and went out to the toilet located in his back yard. He was heard in the back yard groaning and his wife got up and went to him and found him lying on the ground in an unconscious condition. He was admitted to the Clarendon Memorial Hospital at 5:00 o'clock A. M. on April 26, 1965, with a history of having fallen at home in his back yard. He had suffered a dislocated jaw and this was corrected in the hospital by Dr. Joe King. Around noon of the same day the insured fell in the hospital corridor striking his head on the floor which was constructed of tile over cement. A nurse who heard Conyers fall testified that when she heard him fall she immediately went to him, finding him lying on the floor and having an overall convulsion of both hands and legs. A physician testified that at 7:30 P. M. on the day of the fall in the hospital the insured was convulsing and jerking on one side. He continued to convulse during the night and his condition became worse and he died at 7:55 A. M. on April 27, 1965.

An autopsy on the body of the insured was performed by Dr. T. M. Davis. Such revealed a fracture approximately four inches long on the left side of the skull, and directly beneath this fracture was a huge clot of blood measuring 5 1/2 x 3 1/2 x 1 1/2 inches. This clot had completely compressed the left side of the brain by a size similar to the clot and had displaced the brain downward by pressure. This physician testified that there were no other abnormalities of the brain noted and the clot had arisen from gradual bleeding at the fracture site. This physician ascribed the cause of death to a massive epidural hermatoma or clot of recent origin, approximately 24 to 48 hours, due to skull fracture. This physician also stated that this gradual accu-

mulation of blood would cause convulsions and loss of consciousness and such caused the fall in the hospital.

Dr. Davis testified that he sent the entire brain to Dr. D. F. Mullins, Jr., of Augusta, Georgia, a consulting pathologist. The report of the pathologist confirmed the opinion of Dr. Davis as to a pre-existing injury prior to the fall in the hospital and and that such took place approximately four or five days before death.

We think that the foregoing facts were sufficient to make out a *prima facie* case of death from accidental injury. It is apparent that the death of the insured resulted from a fracture of his skull caused by a fall or accident predating his fall in the hospital. Under the facts in this case a presumption arises that the death of the insured was the result of a skull fracture caused by an accident and against the existence of facts bringing the case within the exclusion or exception contained in said policy. The foregoing presumption may, however, be overcome by proof of facts by the appellant that the insured's death was caused or contributed to by a pre-existing epileptic condition. *White v. North Carolina Mut. Life Ins. Co.,* 208 S. C. 168, 37 S. E. (2d) 505.

The appellant sought to prove its defense that the death of the insured was the result of his having epileptic seizures or convulsions by cross examination of the witnesses of the respondent. There is testimony that on several occasions the jaw of the insured became dislocated and was put back in place by Dr. Davis, Dr. King and another physician who is now dead. It is the position of the appellant that the dislocated jaw of the insured was evidence that he suffered from epilepsy. Dr. Davis testified that dislocation of the jaw is not usual in cases of epilepsy. Dr. King testified "a lot of things could cause a jawbone to slip out of joint." He further testified so far as epilepsy is concerned there is no evidence of such "unless you have an electro encephalogram run. * * * Other than that it would be seeing it or a history of epilepsy. So unless I had that

I would have no evidence." No electro encephalogram had been made on the insured. These physicians testified that they had examined the medical record of the insured and there was no evidence that he suffered from epilepsy or had been given any medication therefor.

The testimony reveals that the insured had three known falls. The first one occurred on October 28, 1961 when he fell off of an automobile and dislocated his jaw while at work at a filling station. There is no evidence that this fall was contributed to by any bodily or mental infirmity. The third fall occurred on April 26, 1965 while the insured was a patient in the hospital. The only inference that can be drawn from the testimony is that this fall was caused and occasioned by pressure on his brain from the hematoma or clot resulting from the skull fracture which occurred prior to his admission to the hospital. The second fall of the insured revealed by this record was the one that occurred in his back yard on the morning of April 26, 1965, immediately prior to his admission to the hospital. There is a total absence of any evidence that this fall was caused or contributed to by any bodily or mental infirmity. It is established and confirmed by the medical testimony that the insured suffered a fractured skull as a result of violent and external means at a time prior to his admission to the hospital. The only evidence of an occurrence which could have caused the skull fracture was the fall in his yard.

It is our conclusion that the trial judge committed no error in overruling the motions of the appellant for an involuntary nonsuit, directed verdict and judgment *non obstante veredicto*. We further conclude that the appellant failed to produce any evidence to show that the insured was suffering from any bodily or mental infirmity which could have caused or contributed to his accidental death. This being true, a verdict in favor of the respondent was demanded by the clear and undisputed evidence.

The appellant asserts that the trial judge erred in charging the jury, as to the exclusion clause contained in the insurance contract, that words of doubtful meaning or import are to be construed against the insurance company and in favor of the insured. Assuming that the trial judge was in error in so instructing the jury, such was harmless and not prejudicial to the appellant for the reason there was no evidence to support the defense that the insured's accidental death could have been caused or contributed to by any bodily or mental infirmity. The error complained of could not have affected the verdict reached by the jury. This court will not order a new trial where, from an examination of the record, it has no doubt that the verdict of any fair jury would have been the same even if no error had been committed. *Lowe v. Ottaray Mills,* 93 S. C. 420, 77 S. E. 135.

The appellant charges the trial judge with error in not granting its motion for a mistrial on the ground that the jury returned to the courtroom twice without having reached a verdict. The appellant insists that under Section 38-303 of the Code that its motion should have been granted. After the case had been submitted to the jury it returned to the courtroom and asked for further instructions as to the burden of proof. The trial judge, in compliance with such request, instructed the jury thereabout and it returned to the jury room for further deliberation. Thereafter, the jury returned to the courtroom and announced that it could not agree. The trial judge then sent the jury back for further deliberation and, thereafter, the jury rendered a verdict in favor of the respondent. This brief recital of what took place shows that the jury did not return to the courtroom twice because of its failure to agree on a verdict. The record is crystal clear that the jury returned the first time for a further explanation of the law and only returned once without having agreed upon a verdict. In this situation, the trial judge properly sent the jury back the second time for further deliberation, and in so doing committed no error.

All of the exceptions of the appellant are overruled and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.