18908

Doyle HANN, Appellant, v. CAROLINA CASUALTY INSURANCE COMPANY, Respondent

(167 S. E. (2d) 420)

520

*Messrs. Rainey, Fant & Horton,* of Greenville, *for Appellant,*

*James H. Watson, Esq.,* of Leatherwood, *Walker, Todd & Mann,* of Greenville, *for Respondent,*

April 23, 1969.

BUSSEY, Justice.

This is an action upon an insurance contract, the primary question being whether a combination automobile insurance policy issued by the defendant-respondent to the plaintiff-appellant afforded theft coverage for a Great Dane trailer of the plaintiff which was stolen. The defendant denied that the policy afforded such coverage, and in a counterclaim contingently sought to have the policy reformed in the event the policy was construed as providing coverage.

At the trial before a judge and jury, considerable evidence was admitted over the objection of the plaintiff. Much of the objected to evidence, if admissible, was admissible only in connection with the defendant's contingent contention that it was entitled to a reformation of the policy. At the conclusion of the testimony both parties made motions for directed verdicts in their respective favors which motions the court did not then pass upon. Instead, the court of its own motion concluded that there were no factual issues to submit to the jury and, over the objection of the plaintiff, dismissed the jury and took the case under consideration as one to be decided by the court alone. Thereafter, the court issued its decree in which the policy was construed as not affording coverage, and having arrived at such construction of the policy, the court found it unnecessary to pass upon defendant's contingent claim that the policy should be reformed.

The plaintiff owned a single, long distance tractor and trailer unit composed of a 1961 Kenworth tractor and a 1955 Great Dane trailer. The policy issued to plaintiff by defendant admittedly provided liability coverage for both tractor and trailer, and theft coverage for the tractor, but it is contended by the defendant that it provided no theft coverage for the trailer. Item 3 on the first page of the policy sets forth the coverages provided, the premiums charged for each coverage, and the limits of the insurer's liability with respect to each coverage. In item 3, theft coverage is denoted by the letter "G", and the limit of the insurer's liability in connection therewith is stated as $8,000.00.

Item 4 of the policy is headed "Description of the Automobile and facts respecting its purchase by the named insured". Underneath, in the space provided, both the tractor and trailer are described by model, year and serial number, and with respect to the tractor the additional information is stated that such was purchased, used, June 1966, at an actual cost of $8,000.00. No similar information is set forth with respect to the trailer.

Under insuring agreement IV, the word "automobile" is defined as follows:

"(a) Described automobile—the motor vehicle or trailer described in this policy."

Also contained is the following pertinent language,

"IV. (d). Two or more automobiles.

When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each * * *, (and) they shall be held to be * * * separate automobiles as respects limits of lability, including any deductible provisions under coverages d, e, f, g, h, i, and j." (Coverage g is theft coverage.)

In addition to the limit of liability for theft set forth in item 3, other provisions of the policy limit the company's liability, in the event of loss by theft, to the actual cash value of the property at the time of loss.

In brief, the defendant's contention is that it was necessary to describe the trailer on the face of the policy since it was with the tractor being covered with liability insurance, and that its description was inserted only for such purpose. That since the cost of the tractor and the stated limit of theft liability are the same, *to wit*: $8,000.00, and no cost of the trailer is shown on the face of the policy, it is clear that the theft coverage was limited to the tractor and that the trailer was excluded therefrom.

The lower court, in substance, agreed with the construction contended for by the defendant. When, in the light of the defendant's contention, all of the pertinent provisions of the policy are considered, we think that at most a patent ambiguity arises. If it was the intention of the parties to afford no theft coverage for the trailer, it would have been quite simple for the insurer to have inserted in the policy with respect to theft coverage "tractor only"', or, following the description of the trailer, to have inserted "insured against liability only". Had the insurer done so, any intention to exclude the trailer from theft coverage would have been clear.

We think it not amiss in the instant case to point out clearly the nature of the ambiguity which we consider. In *Jennings v. Talbert, 77* S. C. 454, 58 S. E. 420 (1907), we find the following well stated proposition,

"Ambiguities, however, are patent and latent; the distinction being that in the former case the uncertainty is one which arises upon the words of the will, deed, or other instrument as looked at in themselves, and before any attempt is made to apply them to the object which they describe, while in the latter case the uncertainty arises, not upon the words of the will, deed, or other instrument as looked at in themselves, but upon those words when applied to the object or subject which they describe. 2 Ency. of Law, 388. Thus, where there is conflict in words or clauses of a will or other instrument, the ambiguity is patent."

The construction contended for by the defendant-insurer, while possibly a permissible one, is, we think, rather a strained construction when it would have, as above pointed out, been so very simple for the defendant to clearly show that no theft coverage was provided for the trailer, if indeed such was the intent of the defendant. In any event, such is not the only reasonable construction of the policy. We find no provision in the policy requiring as a precedent for theft coverage that the cost and date of purchase of the trailer be shown on the face of the policy.

Item 4 of the policy declarations describes both the tractor and the trailer. Automobile is defined as, "The motor vehicle or trailer described in this policy." Sec. 1V(d) of the insuring agreements provided that when two or more automobiles were insured they should be held to be separate automobiles with respect to defendant's limit of liability for theft coverage. Since on the face of the policy two vehicles were insured, the policy is clearly susceptible of the reasonable construction that the limitation of $8,000.00 was intended to apply separately to each vehicle insured. The liability of the defendant was further limited, in other pro-

visions, to the actual cash value of the vehicle or vehicles at the time of loss. The stated $8,000.00 limitation was therefore only a maximum limitation applicable separately to the vehicles insured. Since the defendant elected to state on the face of the policy only a single maximum limitation, applicable separately to each vehicle insured, it was only natural for it to make that limitation the same as the cost of the more expensive of the two vehicles.

For the foregoing reasons, we conclude that the policy here was clearly and reasonably susceptible of the construction that it was the intention of the parties to afford and that the policy did afford theft coverage with respect to the trailer. It is settled beyond cavil in this jurisdiction that the terms of an insurance policy should be construed most liberally in favor of the insured, and that in case of conflict or ambiguity, a construction will not be adopted that defeats recovery if the policy is reasonably susceptible of a meaning that will permit recovery. We uniformly give the insured the benefit of any doubt in the construction of the terms used in an insurance policy. This the lower court failed to do and it was in error. See numerous cases collected in West's South Carolina Digest, Insurance, Key No. 146(3).

Plaintiff alleged that the value of the trailer at the time of its loss was $6,000.00, and contends that the lower court should have directed a verdict in his favor for such amount, or, in the alternative, should have directed a verdict as to the liability of the defendant, leaving to the jury only the amount of the loss sustained. We will not review the evidence in detail as to the amount of the loss sustained, it being sufficient to say that the evidence is susceptible of more than one reasonable inference as to the amount of the loss. Accordingly, the amount of the loss was a jury issue. We are of the view that the trial court should have directed a verdict against the defendant as to liability, but submitted to the jury the question of the amount of the loss.

The briefs of both parties deal with the question of whether the ambiguity in the instant policy presented an issue for determination by the Court alone, or an issue for determination by the jury under proper instructions from the court. The plaintiff argues that he was entitled to a directed verdict on the issue of liability, but failing such, the case should have been submitted to the jury for determination of the true intent of the parties. The defendant contends that the issue of coverage should be remaned for a jury trial in the event of this court not agreeing with its construction of the policy.

With respect to the contentions thus made, a review of many former decisions of this court leads to the following conclusions. Admittedly there may be found in some decisions apparent authority, as well as mere pronouncements, supporting the broadly stated proposition that any kind of ambiguity in an insurance policy presents an issue for determination by the jury under proper instructions from the court. In many cases the court failed to characterize the particular ambiguity involved or to mention any distinction between patent and latent ambiguities. In a number of cases no point was made as to whether or not a jury issue was presented. Nevertheless, this court in a long line of cases dealing with ambiguities in insurance policies, which were in fact patent ambiguities, has held, either expressly or in effect, that the construction of the particular policy was a matter of determination by the court and that no jury issue was involved. It is at least difficult to conceive how the well established rule of liberal construction in favor of an insured could otherwise be fully applied and enforced. *Columbia College v. Penn. Ins. Co.*, 250 S. C. 237, 157 S. E. (2d) 416 (1967) ; *Eves v. Progressive Fire Ins. Co.*, 217 S. C. 365, 60 S. E. (2d) 687 (1950) ; *Bolt v. Life and Casualty Ins. Co.*, of Tenn., 156 S. C. 117, 152 S. E. 766 (1930) ; *Pitts v. Glens Falls Indemnity Co.*, 222 S. C. 133, 72 S. E. (2d) 174 (1952) ; *Sloan v. Colonial Life & Accident Ins. Co.*, 222 S. C. 248, 72 S. E. (2d) 446 (1952) ; *Harwell v.*

*Mut. Ben. Health & Accident Ass'n,* 207 S C. 150, 35 S. E.
(2d) 160, 161 A. L. R. 183 (1945); *Cullum v. N. Y. Life
Ins. Co.,* 197 S. C. 6, 14 S. E. (2d) 361, 135 A. L. R.
867 (1941); *Walker v. Commercial Casualty Ins. Co.,* 191
S. C. 187, 4 S. E. (2d) 248 (1939); *Sample v. London &
L. Fire Ins. Co.,* 46 S. C. 491, 24 S. E. 334, 47 L. R. A.
696 (1896).

Both parties moved for a directed verdict in their respective favors as to the counterclaim of the defendant wherein it contingently sought a reformation of the policy on the ground of alleged mutual mistake. The lower court having arrived at a construction of the policy favorable to the defendant found it unnecessary to pass upon such motions, and plaintiff has appealed, *inter alia,* from the refusal of the court to grant its motion for a directed verdict. While both parties denominated their respective motions as motions for directed verdicts, their motions were, in effect, for judgments in their respective favors as to the issues raised by the counter-claim and the reply thereto.

This is an action at law wherein the defendant by way of counterclaim interposed an alleged equitable defense. The issues of fact arising upon such equitable defense were triable by the court in the exercise of its chancery jurisdiction, rather than by the jury. *Jones v. Barco, Inc.,* 250 S. C. 522, 159 S. E. (2d) 279 (1968); *Coleman v. Coleman,* 208 S. C. 103, 117-119, 37 S. E. (2d) 305, 313-314 (1946), and the authorities therein cited.

We are of the view that the trial court should have granted judgment in favor of the plaintiff on the equitable issue raised by defendant's counterclaim.
"* * * before a court of equity will reform a solemn instrument, it must be shown by evidence which is the most clear and convincing, not simply [that] it was a mistake on the part of one of the parties but that it was a mutual mistake; that both parties intended a certain thing; and that by mistake in the drafting of the paper did not get

what both parties intended." *Sullivan v. Moore,* 92 S. C. 305, 75 S. E. 497 (1957), and numerous cases cited in West's South Carolina Digest, Reformation of Instrument, Key No. 45.

In the instant case the evidence adduced by the defendant falls far short, we think, of being clear and convincing that it is entitled to a reformation of the policy. Assuming that there was any mistake, the evidence is insufficient, we think, to show anything more than a unilateral mistake on the part of the defendant. In the final analysis, the contention of the defendant that there was a mutual mistake is predicated largely upon the erroneous conclusion that one Callaham, an insurance agent, was the agent of the plaintiff, rather than the agent of defendant. We review the evidence only to the extent necessary to show the fallacy of the defendant's contention. The said Callaham was a licensed agent for several companies but not licensed by or for the defendant. The policy in question was issued by Southeastern Insurance Service, general agent of the defendant, the person in charge of the issuing of the policy being a Mrs. Staton, an officer of the latter agency.

None of the companies for or by whom Callaham was licensed sold insurance on long distance tractor and trailer units. Callaham solicited the policy in question, using one of defendant's printed application forms, which four page form was completed by Callaham, correct answers to numerous questions being furnished by the plaintiff. The application was signed by the plaintiff at the bottom of the third page but not read by him. The printed portions of the application, as filled in, clearly showed that the plaintiff was applying for theft coverage for both the tractor and the trailer. The printed application form contained no allotted space for showing either premium rates or limits of liability. At the marginal top of page 2 of the application there are some not too legible notations entered by Callaham with respect to both limits and premiums. A close inspec-

tion of such notations might well indicate that the premium for theft coverage was calculated on the tractor alone, but even the word "tractor" lacks a great deal of being completely legible. Such marginal notation with respect to the premium for theft coverage is the sole thing in or about the application relied upon to indicate that theft coverage was intended to be restricted to the tractor alone. There is no evidence whatever that such notation was shown to or seen by the plaintiff.

Callaham delivered the application to Mrs. Staton and according to her testimony she, relying upon such notation, struck from the application the information therein contained as to the cost of the trailer, $5,-000.00, and caused such, as well as the date of purchase, to be omitted from the policy issued, intending thereby to eliminate theft coverage on the trailer. That she took it upon herself to do so was not known to the plaintiff until the trial of the case. Callaham delivered the policy as written to the plaintiff, collected the monthly installments due on the premium from plaintiff and transmitted them to the defendant. The only reasonable inference from the evidence is that Callaham was acting for the defendant in the matters hereinabove related and he, in fact, on cross-examination candidly admitted that he represented the defendant. That Callaham was the agent of the defendant, rather than the agent of the plaintiff, is quite clear. See Sec. 37-233 of the 1962 Code of Laws and numerous cases cited thereunder.

Callaham being the agent of the defendant rather than the agent of the plaintiff, any mistake on his part was not the plaintiff's mistake and the only evidence tending to prove a mutual mistake is the testimony of Callaham himself.

He testified that theft coverage on the trailer was omitted at the request of the plaintiff, and hence his calculation of the premium on the tractor alone, but offered no satisfactory explanation as to why the application prepared by

him, save for the marginal notation he made thereon, clearly showed in all other respects that theft coverage on the trailer was being applied for. He further testified that when he delivered the policy, he explained the same in detail to the plaintiff, including the contended fact that no theft coverage was provided for the trailer. His testimony in the foregoing particulars was categorically denied by the plaintiff. When all of the circumstances disclosed by the record are considered, we conclude that the evidence tending to prove a mutual mistake fell far short of constituting the required clear and convincing evidence that there was in fact a mutual mistake. To allow an insurer, under the circumstances here reflected, to reform its policy and escape its liability under its policy and well established principles of law would, we think, open wide the door to fraud.

For the reasons hereinabove stated, the judgment of the lower court is reversed and the cause remanded for trial of the issue of the amount of the loss sustained by the plaintiff.

Reversed and remanded.

Moss, C. J., and Lewis, Brailsford and Littlejohn, JJ., concur.