20097

Harry STEVENSON, Respondent, v. CONNECTICUT GENERAL
LIFE INSURANCE COMPANY, Appellant

(218 S. E. (2d) 427)

*William M. Grant, Jr., Esq.,* of *Haynsworth, Perry, Bryant, Marion & Johnstone,* Greenville, *for Appellant,* cites:

*Michael O. Hawkins, Esq.,* of Anderson, *for Respondent,* cites:

September 24, 1975.

BUSSEY, Justice:

The plaintiff-respondent Stevenson was the holder of an accident insurance policy issued by the defendant-appellant Connecticut, which provided for the payment of certain designated amounts if the insured "received an accidental bodily injury * * *, and as a result of the injury or exposure,

directly and independently of all other causes, has suffered any of the following losses * * *." The insured suffered the amputation of his left foot following an injury; the insurer denied liability and upon trial the insured obtained a jury verdict and the insurer appeals.

The primary contention of the insurer is that it was entitled to a judgment *n. o. v.* Our consideration of such contention is governed by two elementary propositions of law. First, the evidence and all the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the insured. Secondly,

"It is settled beyond cavil in this jurisdiction that the terms of an insurance policy should be construed most liberally in favor of the insured, and that in case of conflict or ambiguity, a construction will not be adopted that defeats recovery if the policy is reasonably susceptible of a meaning that will permit recovery. We uniformly give the insured the benefit of any doubt in the construction of the terms used in an insurance policy." *Hann v. Carolina Casualty Insurance Company*, 252 S. C. 518, 167 S. E. (2d) 420.

See also numerous cases cited in West's South Carolina Digest, Key 146.

We first proceed to state the facts and the inferences reasonably deducible therefrom in the light of the principle above mentioned. In July, 1972, the insured and his wife were residents of Oconee County, the insured having recently retired and moved from another state. He had been a diabetic for a number of years, his diabetic condition having caused peripheral neuropathy, a loss of feeling in his lower extremities. He had acquired a fishing boat in a state, other than South Carolina, where he formerly lived and had used the same before coming to South Carolina, but always at night or in the late afternoon. The insured was well aware of the loss of feeling in his feet and had not gone swimming or fishing without his shoes in 10 years for fear of injuring

his feet on stones or other obstacles. One of his principal reasons for buying the boat was to be able to swim and fish therefrom without having to wear shoes.

On July 20, 1972, while on a fishing trip on Lake Keowee the insured walked barefooted on the deck of his boat, the first time he had ever done so in the middle of a hot day. Unknown to and unanticipated by him was the fact that the temperature of the deck of the boat had risen to 200-250 degrees from the heat of the mid-day sun. Before realizing that he was being injured he suffered third degree burns to his feet and eventually lost his left foot by amputation.

While there is medical evidence from which it could be inferred that his foot could have been saved but for his diabetic condition, there is positive medical testimony to the effect that as a result of the burns sustained on the deck of the boat he had dead bone in his foot and the foot was amputated because of such dead bone and infection, which also stemmed from the burn.

The insurer argues that the insured did not receive "an accidental bodily injury" within the meaning and intent of the policy in that a reasonably prudent person in the same position of the insured should have foreseen the injury to his extremities in view of his lack of feeling therein and that such being reasonably foreseeable it was not accidental. In support of this contention the insurer relies on certain Federal court decisions as well as decisions of other jurisdictions and a recent decision of this Court, *Gulledge v. Atlantic Coast Life Insurance Company,* 255 S. C. 472, 179 S. E. (2d) 605. We do not regard any of the authorities cited as being either controlling or persuasive. There is, admittedly, language in the *Gulledge* opinion which seems to support the insurer's contention, but the *Gulledge* case was an assault case where it was argued, *inter alia,* that the conduct of the insured provoked the assault. Moreover the policy language was different and in addition the Court affirmed a directed verdict holding in effect that there was coverage as a matter of law.

The case of *Goethe v. New York Life Insurance Company*, 183 S. C. 199, 190 S. E. 451 (1937), although a double indemnity case, is still the leading and controlling decision of this Court as to what constitutes an "accident" within the purview of an insurance policy. It was there pointed out that it is well settled that the words "accident" and "accidental" have never acquired any technical meaning in law, and when used in an insurance contract they are to be constructed according to the common speech and common usage of people generally. If there be any ambiguity in the phrase "accidental bodily injury" such has been created, we think, by the efforts of insurers to limit the coverage afforded under an accident insurance policy; the phraseology employed by insurers to narrow coverage and the efforts of courts to fairly resolve contentions as to the meaning of the language so employed.

Webster's Third New International Dictionary defines the word "accident", *inter alia,* as follows, "sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." Such is, we think, the meaning of the term generally understood and accepted by most people. In *Goethe* the Court quoted with approval from *Lickleider v. Iowa State Traveling Men's Association,* 184 Iowa 423, 166 N. W. 363, 366, 168 N. W. 884, where it was said:

" 'Accident insurance companies do business mostly with the common people, and the term "accident" as used in these policies should be defined according to the ordinary and usual understanding of its signification.' (See *Young v. Railway Mail Assoc.,* 126 Mo. App. [325], 341, 103 S. W. 557.)

"It makes no difference whether the injured man or some other person voluntarily sets in motion the first of a series of events which in connected line of causation results in his injury or death. If, to use the language I have quoted, the

resulting injury and violence to him, 'unexpectedly took place,' or was 'an unexpected result from a known cause,' or was produced 'without design or intention,' or was 'an unusual and unexpected result attending the performance of a usual or necessary act,' or was an 'event happening without the concurrence of the will of the person by whose agency it was caused,' or if it was 'caused or produced without design,' it falls directly within the letter and spirit of the definition which has been placed upon the words by the most competent lexicographers as well as by our most eminent jurists who have given attention thereto."

See also *Ducker v. Central Surety & Insurance Corporation,* 234 S. C. 228, 107 S. E. (2d) 342.

The insurer's argument that the insured did not sustain an accidental injury, because such should have been foreseen by a reasonably prudent person in the same position, is in essence a contention that insured's recovery for injury should be barred because of his alleged negligence. To so hold would, we think, be to construe the policy strictly against the insured and in favor of the insurer and to ignore the ordinary meaning of the word accident. An interesting and persuasive case in point is that of *Freeman v. Commonwealth Life Insurance Company of Louisville, Kentucky,* 259 Ind. 237, 286 N. E. (2d) 396 (1972).

44 Am. Jur. (2d) 62, Insurance, section 1216, states the general rule with respect to accident insurance as follows,

"Recovery on an accident insurance policy is not defeated by the mere fact that negligence of the insured contributed to the injury, unless the policy expressly excepts from the risk accidents due to the negligence of the insured."

See also, to the same effect, 45 C. J. S. Insurance § 775, p. 808. In accord with the foregoing text and directly in point is the South Carolina case of *Wheeler v. Globe & Rutgers Fire Insurance Company,* 125 S. C. 320, 118 S. E. 609.

> We hold that whether the burning of the insured was an accidental bodily injury, is not to be determined in terms of whether it was reasonably foreseeable,

but in terms of whether it occurred with his intent or volition; whether it was an event which he actually expected or anticipated as a result of walking on the boat deck. Anything less was an accidental bodily injury even though his conduct might be regarded as careless or negligent. The evidence in this case did not give rise to any inference of his having burned his feet of his own intent or volition.

The insurer's second contention is that even though the insured did sustain an "accidental bodily injury" the ultimate amputation did not occur as a result of such accidental bodily injury "directly and independently of all other causes."

While the insurer relies upon various decisions in and out of this State in support of its contention, principal reliance is placed upon *Gamble v. Travelers Insurance Company*, 251 S. C. 98, 160 S. E. (2d) 523 (1968). Admittedly the opinion in the *Gamble* case contains broad language which would support the insurer's narrow construction of its policy here. Overlooked by the insurer is the fact that in the *Gamble* case the policy contained an exclusionary clause, not contained in the policy here. The policy there excluded coverage of any loss "caused or contributed to by bodily or mental infirmity, disease or infection * * *, even though the proximate and precipitating cause of the loss is accidental bodily injury."

In the present case, construing the language of the policy most favorably to the insured as we are required to do, we are of the view that coverage was afforded as long as the amputation was proximately caused by the accidental bodily injury, even though some other cause may have contributed to a minor degree. See the case of *Lesley v. American Security Insurance Company*, 261 S. C. 178, 199 S. E. (2d) 82, for discussion of the meaning of proximate cause of a loss, and how such is to be regarded in determining whether recovery may be had under the terms of an insurance policy. That case involved insurance

against loss from fire and lightning, but as we note from 44 Am. Jur. (2d) 62, Insurance, section 1215, it appears that the same general rule is applicable with respect to the determination of coverage under accident policies. It is there said,

"In accident insurance the question whether the insurer is liable for an injury depends on the proximate cause of the loss. The term 'proximate cause,' as here used, means the same as in other insurance cases, and a provision requiring loss to be caused by accident 'independent of all other causes' is equivalent to a provision requiring it to be the proximate cause."

Our own cases are to the effect that an insured does not have to be in perfect health at the time an accident occurs in order to recover for an accidental injury under policy language such as contained in the policy here. See *Kilgore v. Reserve Life Insurance Company,* 231 S. C. 111, 97 S. E. (2d) 392, and *Richardson v. Pilot Life Insurance Company,* 237 S. C. 47, 115 S. E. (2d) 500. Here, viewing the evidence favorably to the insured, the injury was the nearest efficient cause and therefore the proximate cause of the loss. At best the insurer was only entitled to a jury determination of whether the amputation was a direct result of the injury, independently of all other causes.

Finally, the insurer contends that the trial judge erred in charging the jury that ambiguities in an insurance contract are to be construed against the insurer, the predicate of the alleged error being the assertion that there was no ambiguity in the policy language here involved. As is not unusual in cases of this kind, both the insured and the insurer argue that the language is clear and unambiguous, but in their respective favors. We do not deem this point to require any extended discussion. Suffice it to say that we are not convinced that the policy language is entirely free of ambiguities, at least when applied to the facts of this case, and hence the contention that there was no am-

biguity therein is without merit. We are unconvinced of any prejudicial error below and the judgment is accordingly,

Affirmed.

Moss, C. J., and LEWIS, J., concur.

LITTLEJOHN and NESS, JJ., concur in result.

LITTLEJOHN, Justice (concurring) :

We concur in the result of the opinion of Mr. Justice Bussey. In our view the Court need not belabor the issue of whether the insured experienced an accident. The motion for a directed verdict on this point might properly have been granted.

Here the charge to the jury as to the interpretation of the policy could have done no harm in as much as the Court should have, as a matter of law, interpreted the policy favorably to the insured.

· NESS, J., concurs.