**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Allegheny Casualty Company, Appellant,

v.

Netmoco, Inc., Nora B. Lewis, and Harold L. Lewis, Respondents.

Appellate Case No. 2009-CP-44-200

———————————

Appeal From Union County
John C. Hayes, III, Circuit Court Judge

———————————

Unpublished Opinion No. 2013-UP-097
Heard January 16, 2013 – Filed March 6, 2013

———————————

**REVERSED AND REMANDED**

———————————

Kimila L. Wooten, of Elmore Goldsmith, P.A., of Murrells Inlet, for Appellant.

Jason Imhoff, of The Ward Law Firm, P.A., of Columbia, for Respondents.

———————————

**PER CURIAM:**  Respondent Netmoco, Inc., (Netmoco) is a South Carolina corporation engaged in vegetation management services.  In February 2007, Netmoco entered into a contract with the South Carolina Department of Transportation (SCDOT) to perform vegetation management within Chester County, South Carolina.  Netmoco procured a performance bond, as required by state law to protect SCDOT against defects or failures of Netmoco's performance, from surety Appellant Allegheny Casualty Company (Allegheny).

In conjunction with Allegheny issuing the aforementioned bond, Netmoco, as well as Nora and Howard Lewis, executed a General Indemnity Agreement (GIA).  The GIA required Netmoco and the Lewises to indemnify Allegheny for certain liabilities, losses, costs, damages, attorney's fees, and other expenses that Allegheny may sustain or incur in connection with the Bond.

Prior to Netmoco completing performance of the Chester County contract, a dispute arose between Netmoco and SCDOT, with SCDOT making a bond claim for $75,127.04 to Allegheny.  SCDOT alleged Netmoco defaulted due to non-performance, thus necessitating SCDOT's proper termination of the contract and hiring another entity to complete the project.  "Netmoco explained to Allegheny that it vehemently disagreed with SCDOT's allegations and instead insisted that SCDOT had breached the contract."  Specifically, Netmoco alleged SCDOT shorted payments and demanded performance beyond contractual terms.

After SCDOT filed the bond claim, Allegheny sent Netmoco two letters.  The first included SCDOT's claim and requested related information, while the second demanded $85,000 collateral security, pending the matter's resolution.

When both Netmoco and SCDOT refused to compromise their respective positions, Allegheny sought, in federal court, a declaration of "the rights, obligations, and breaches, if any, of the parties under the [vegetation management contract] and the [Bond]."  Allegheny's complaint asserted a declaratory judgment would "clarify and settle all legal relations in issue between the parties."  Allegheny's suit named Netmoco, the Lewises, and SCDOT as parties.

Prior to any declaratory ruling, all parties entered into a Settlement Agreement with *no admissions of any liability by any of the involved parties*.  Within the Settlement Agreement, the parties agreed as follows:

> 1. *The parties* [*will release*] *any and all claims . . .*
> arising out of any damages sustained by the parties

> resulting directly or indirectly from [the] Vegetation Management contract . . . and Performance Bond . . . , *except as hereinafter set forth . . . . Any claims which Allegheny may have . . . under the [GIA] . . . are excluded from this Settlement Agreement . . .*
>
> 3. *Each party will separately pay their own attorneys and the costs* incurred in *this* matter.
>
> 4. PLAINTIFF AND DEFENDANTS ACKNOWLEDGE THAT THE ABOVE REPRESENTS THE TERMS OF THEIR AGREEMENT AND IS A FULL AND COMPLETE SETTLEMENT OF THE CASE.

(italicized emphases added).

Although this agreement settled the declaratory judgment action (dispute over alleged breaches of the vegetation management contract), Allegheny, Netmoco, and the Lewises now dispute whether the settlement's written terms resolved only the vegetation management contract dispute, or, whether in addition to resolving any issues of such contractual liability, the settlement also resolved any claims arising out of the alleged breaches, such as claims for indemnification for attorney's fees and costs *separately provided for within the GIA*.[1]  Thus, it is the interplay, if any, between Paragraphs One and Three presently at issue.

Allegheny, in the belief that Paragraph One specifically excluded from settlement all *GIA* claims, filed suit in state court seeking indemnification of attorney's fees and costs related to enforcing the *GIA*.  In Allegheny's view, Paragraph Three "applies only to claims not covered by the GIA."  In contrast, Netmoco believes Paragraphs One and Three, collectively, fully resolved the apportionment of attorney's fees and costs arising from either the underlying GIA or the related declaratory suit instituted to determine obligations under the performance bond.

---

[1] The GIA provided Allegheny with  a right to indemnification for any and all liability, loss, costs, damages, attorney's fees and other expenses which Allegheny sustains or incurs in enforcing the GIA's terms, in procuring or attempting to procure Allegheny's release from liability, or in recovering or attempting to recover losses or expenses incurred.  The agreement also permitted the bringing of separate suits and that such suits shall not prejudice other suits upon other causes of action.

After Netmoco responded to Allegheny's complaint seeking indemnification pursuant to the GIA, Netmoco moved for summary judgment. Netmoco argued that under the Settlement Agreement's terms, Allegheny already released Netmoco from any such claims. Allegheny also filed a motion for summary judgment based upon its opposing contractual interpretation. In determining the motions' merits, the state trial court reasoned that the general language of Paragraph One, reserving the parties' rights under the surety agreement, was subsequently constrained by the more specific language of Paragraph Three requiring the parties "separately pay their own attorney's fees and costs." In view of its interpretation, the court found "no genuine issue of fact existed," granted Netmoco's related motion, and, effectively, thwarted Allegheny's ability to seek indemnification under the GIA.

While the trial court's interpretation was sensible, we hold the Settlement Agreement was also susceptible of another reasonable interpretation; thus, a genuine issue of material fact existed and summary judgment was improper.

Summary judgment is appropriate only when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *see Helms Realty, Inc. v. Gibson-Wall Co.*, 363 S.C. 334, 340, 611 S.E.2d 485, 488 (2005). In determining whether triable issues of fact exist, a court views evidence and all inferences in the light most favorable to the non-moving party. *Willis v. Wu*, 362 S.C. 146, 151, 607 S.E.2d 63, 65 (2004). Consequently, summary judgment is proper when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, *Ellis v. Davidson*, 358 S.C. 509, 518, 595 S.E.2d 817, 822 (Ct. App. 2004), but not when further fact inquiry is desirable to clarify the law's application. *Tupper v. Dorchester Cnty.*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997).

When applying these principles to a dispute over a contract's construction, contractual ambiguity is the crux of the matter; whether contractual ambiguity exists is a question of law for the court, while actual construction of an ambiguous contract is a question for the trier of fact. *Soil Remediation Co. v. Nu–Way Envtl., Inc.*, 325 S.C. 231, 234, 482 S.E.2d 554, 555 (1997). Owing to this delineation of roles, summary judgment is improper when an ambiguous contract is at issue because the court cannot clearly ascertain the parties' intent from the instrument's four corners. *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct. App. 2008); s*ee Soil Remediation*, 325 S.C. at 234, 482 S.E.2d at 555-56 (holding an ambiguous contract's construction must be submitted to the jury). Likewise, because South Carolina law views settlement agreements as contracts,

these same principles determine whether summary judgment, based upon a particular interpretation of a settlement agreement, is proper. *Pee Dee*, 381 S.C. at 241-42, 672 S.E.2d at 803. Accordingly, a court cannot grant summary judgment for a particular interpretation of an ambiguous settlement agreement. *Id.*

A settlement agreement is ambiguous when its terms are reasonably susceptible of more than one interpretation. *Id.* at 242, 672 S.E.2d at 802. Such variations in contractual meaning can arise due to differing interpretations of the instrument's actual words or when applying the otherwise clear terms to the objects they describe. *Hann v. Carolina Cas. Ins. Co.*, 252 S.C. 518, 524, 167 S.E.2d 420, 422 (1969). Courts cannot, however, base ambiguity upon an isolated clause; courts must consider the entire document. *Pee Dee*, 381 S.C. at 242, 672 S.E.2d at 803.

After considering the Settlement Agreement in its entirety, ambiguity exists both within the instrument's words and in their application to the objects they describe. Moreover, the ambiguity results from the interplay between two key provisions, both of which utilize rather loose language, and, as a result, call the entire contract's meaning into question. In fact, the Settlement Agreement is capable of two reasonable, yet diametrically opposed interpretations, each of which forms the basis of either Appellant's or Respondent's argument before this court.

It is entirely sensible to interpret, as did the trial court, the general and broad reservation of all GIA rights within Paragraph One as yielding to Paragraph Three's more specific language extinguishing a *single* GIA right, *i.e.*, Allegheny's right to indemnification. Even so, the Settlement Agreement is reasonably susceptible of another interpretation.

Paragraph One states "[t]he parties [will release] any and all claims . . . , *except as hereinafter set forth . . . . Any claims which Allegheny may have . . . under the [GIA] . . . are excluded from this Settlement Agreement . . . .*" In view of this language, the Settlement Agreement is also susceptible of the interpretation that Allegheny's GIA-based indemnification claims remain viable because the paragraph's terms specifically and entirely excluded from settlement any GIA claims. Therefore, to the extent that Paragraph One *wholly excluded* GIA-based claims from the settlement's scope, Paragraph Three was then completely inapplicable to such claims and, thus, had no impact on Allegheny's ability to later seek indemnification for attorney's fees and costs pursuant to the GIA.

Furthermore, this interpretation neither renders Paragraph Three superfluous or a contractual term meaningless. *See Auto Owners Ins. Co. v. Newman*, 385 S.C. 187,

195 684 S.E.2d 541, 545 (2009) (stating contractual construction should give effect to the whole instrument and its various provisions). Under this interpretation, Paragraph Three still addressed attorney's fees and costs related to the declaratory action, *i.e.*, "this matter." Therefore, this interpretation gives meaning to all provisions, is internally consistent, and complies with rules of construction. Thus, it too, is reasonable.

In sum, the Settlement Agreement is reasonably susceptible of two different interpretations and, therefore, ambiguous. *Pee Dee*, 381 S.C. at 242, 672 S.E.2d at 802. Because the Settlement Agreement does not clearly express the parties' intent, its ultimate construction is not a matter for a court. *See Soil Remediation*, 325 S.C. at 234, 482 S.E.2d at 555-56 (holding a court can construe an unambiguous contract, while the trier of fact must determine the meaning of an ambiguous one). Accordingly, the grant of summary judgment improperly precluded the jury from determining which of the two reasonable interpretations actually represented the parties' intent. *See id.* (holding the question of what the parties intended is one of fact for the jury).

## CONCLUSION

Based on the foregoing, the decision of the circuit court is

**REVERSED AND REMANDED.**

**HUFF, THOMAS, and GEATHERS, JJ., concur.**