37 F.3d 1495
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Brian Delaine SIMPSON, minor, by his guardian ad litem,
Grady E. Mcmehan, Plaintiff-Appellant,
and
and Joyce Mae CHAMBERS, as personal representative of the
Estate of William Henry Chambers (Deceased), and as heir of
the Estate; Antonio Marquez Chambers, minor, by and through
Joyce Mae Chambers, his representative and general guardian,
Plaintiffs,
v.
JEFFERSON-PILOT LIFE INSURANCE COMPANY, a North Carolina
corporation, Defendant-Appellee.
 No. 93-2462.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 6, 1994.
Decided: October 18, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Rock Hill. Dennis W. Shedd, District Judge. (CA-92-1834-19)
 S. Michael Camp, John Martin Foster, Rock Hill, South Carolina, for Appellant.
 Valentine H. Stieglitz, III, Nexsen, Pruet, Jacobs & Pollard, Columbia, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and HALL and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Shortly after midnight on June 3, 1991, William Henry Chambers, while sitting on a railroad track, was struck and killed by an oncoming Norfolk & Southern Railway System train. The Norfolk & Southern engineer operating the engine at the time stated that he saw the deceased approximately 750 feet away, sitting on the west rail of the track with his head between his legs, and that even after he began blowing the train's horn, the deceased did not look up or even attempt to move. The coroner's report after the accident indicated that the deceased had a blood alcohol level of .274 and that the deceased had a history of alcohol abuse.
 
 
 2
 At the time of Chambers' death, he had been employed by B & M Packaging Company, Inc., which provided its employees with an employee welfare benefit plan issued and administered by JeffersonPilot Life Insurance Company. The plan provided group life insurance in the amount of $20,000 and accidental death insurance in the amount of $20,000. Chambers had designated his minor son, Brian D. Simpson, as the sole beneficiary. Following Chambers' death, his wife, Joyce Mae Chambers, as personal representative of the estate of William Henry Chambers and as a personal representative of their children, filed claims for both life insurance and accidental death benefits with Jefferson-Pilot Life. On August 12, 1991, Jefferson-Pilot Life sent Joyce Mae Chambers a check in the amount of $20,000 "as death claim settlement for William Henry Chambers." In its transmittal letter accompanying the check, the company stated, "This represents life benefits only. The accidental death benefit will be paid promptly, but will be subject to a slight delay for collection of additional information. This is a routine procedure with accidental death claims." Following an investigation, Jefferson-Pilot Life advised Joyce Mae Chambers that it would not pay accidental benefits because "Mr. Chambers had been drinking and voluntarily sat on the railroad tracks prior to being struck by the train."
 
 
 3
 Joyce Mae Chambers filed suit under the Employee Retirement Income Security Act, 29 U.S.C. Sec. 1001, et seq. ("ERISA"), seeking a declaratory judgment of entitlement to accidental death benefits, damages for breach of contract, and damages based on Jefferson-Life Pilot's letter assuring that accidental death benefits would be "paid promptly." Chambers alleged that in reliance on the insurance company's August 12 letter, she expended money for children's clothing, kitchen repair, living room repair, and living room furniture, totaling $9100. At the beginning of trial, the complaint was amended to name Brian D. Simpson, a minor, by a guardian ad litem, as the only plaintiff.
 
 
 4
 Following a bench trial, the district court found that Simpson was not entitled to recover accidental death benefits under the plan since Chambers' death was not accidental within the plan's terms, but "the result of his voluntarily becoming intoxicated, losing consciousness while sitting on a railroad track, and thereafter being struck by a train." The court concluded that death is not accidental when it is "a foreseeable result of [Chambers'] voluntary act of sitting on the railroad track while intoxicated." The court found support for this interpretation in the state law of both South Carolina and North Carolina. See Allred v. Prudential Ins. Co. of America, 100 S.E.2d 226 (N.C.1957); Gulledge v. Atlantic Coast Life Ins. Co., 179 S.E.2d 605 (S.C.1971). Regarding the estoppel claim, the court held that there was no justifiable reliance to prove such a claim. The court found that only one of the receipts submitted in support of expenses, in the amount of $84.77, was dated between August 12, 1991, when the letter from Jefferson-Pilot Life was received, and August 30, 1991, when Joyce Mae Chambers' counsel knew that Jefferson-Pilot Life had not yet determined whether it would provide accidental benefits. The court also found that there was no evidence to show that any of the expenditures were necessary or even desired by the beneficiary of the policy or incurred on his behalf. From judgment entered in favor of Jefferson-Pilot Life, this appeal was taken.
 
 
 5
 Simpson contends that because his father's death was not specifically excluded from coverage by the "Exclusions" section of the policy, it must be covered under the policy. Recognizing the policy's exclusions for suicide and for death caused by disease or bodily or mental infirmity (whether a proximate or contributing cause), he argues that the facts fall under neither exclusion. His logic seems to be that if the death is not excludable, then by default, it is a covered loss under Jefferson-Pilot Life's policy. This argument, however, fails to recognize that the burden lies on Simpson in the first instance to prove that the loss is a "Covered Loss" under the policy, and only then is Jefferson-Pilot Life required to prove that the death is excluded under specific language of an exclusion provision. The first question, therefore, is whether Simpson proved that the loss is a covered loss under the terms of the policy.* On this issue, the district court found as a fact that Chambers voluntarily became intoxicated and voluntarily sat on the railroad track and that his death was the foreseeable consequence of his voluntary acts. Relying on state law to interpret the ERISA plan's accidental death provision, the court concluded that Simpson failed to establish an accidental death, which is a covered loss. We cannot say that the court's factual conclusions are clearly erroneous, and its legal conclusion follows from its factual finding. Simpson is simply unable, in the circumstances, to carry the burden of proving an accidental loss.
 
 
 6
 Simpson agrees that the district court should have looked to South Carolina law to assist in interpreting the ERISA plan, but he argues that Chambers' death was accidental under the holding in Stevenson v. Connecticut General Life Ins. Co., 218 S.E.2d 427 (S.C.1975). In Stevenson, the claimant suffered burns to his feet resulting in their amputation when he walked barefooted on the deck of a boat that had been heated by the sun. At the time, the claimant had no feeling in his lower extremities because of a diabetic condition. In holding that the burning of the claimant was an accidental bodily injury under the policy, the court stated:
 
 
 7
 [the question] is not to be determined in terms of whether it was reasonably foreseeable, but in terms of whether it occurred with his intent or volition; whether it was an event which he actually expected or anticipated as a result of walking on the boat deck. Anything less was an accidental bodily injury even though his conduct might be regarded as careless or negligent.
 
 
 8
 Id. at 430. Simpson thus argues that his father's death was accidental under this standard because he did not intend to be struck by an oncoming train by sitting on the tracks and falling asleep.
 
 
 9
 The intent language of Stevenson, however, does not focus on whether the insured intended for the accident to occur, but whether the injury was one the insured actually "expected or anticipated." In Stevenson, the claimant did not expect or anticipate that by walking on the deck he would damage his feet. The same cannot be said by Chambers who was found voluntarily to have sat on a railroad track with its inherent risk of death from an approaching train.
 
 
 10
 From the little evidence available, the district court was not clearly erroneous in concluding that Chambers had been drinking and had sat voluntarily on the railroad tracks prior to being struck by the train. The court did not need to go so far as to find that Chambers intended to commit suicide, but only that Chambers' act of sitting on the track, with its inherent danger, was voluntary, or that Simpson could not prove otherwise.
 
 
 11
 The second issue raised by Simpson is whether the district court properly denied Simpson's estoppel claim. Upon an examination of the record, we can find no evidence that Joyce Mae Chambers incurred any expenses for Simpson in reliance on Jefferson-Pilot Life's August 12 letter. The district court's factual findings on this issue were not clearly erroneous.
 
 AFFIRMED
 HALL, Circuit Judge, dissenting:
 
 12
 Chambers' death is a "covered loss" if it was "the direct result of the injuries received in an accident, independent of all other causes." Aside from a list of specific exclusions,[1] e.g., "intentional, selfinflicted injury," the policy gives no guidance beyond the definition quoted above. I ascribe to Justice Cardozo's view: "When a man has died in such a way that his death is spoken of as an accident, he has died because of an accident, and hence by accidental means." Landress v. Phoenix Mut. Life Ins. Co., 291 U.S. 491, 499 (1934) (Cardozo, J., dissenting). I read the South Carolina cases to espouse the same view.
 
 
 13
 In Stevenson v. Conn. General Life Ins. Co., 218 S.E.2d 427, 429 (S.C.1975), the Supreme Court of South Carolina quoted the following language from an opinion that the court described as the leading and controlling decision of that court as to what constitutes an "accident":
 
 
 14
 It makes no difference whether the injured man or some other person voluntarily sets in motion the first of a series of events which in connected line of causation results in injury or death. If ... the resulting injury and violence to him "unexpectedly took place," or was "an unexpected result from a known cause," or was produced "without design or intention," or was "an unusual and unexpected result attending the performance of a usual or necessary act," or was an "event happening without the concurrence or the will of the person by whose agency it was caused," or it was "caused or produced without design," it falls directly within the letter and spirit of the definition which has been placed upon the words by the most competent lexicographers as well as by our most eminent jurists who have given attention thereto.
 
 
 15
 (quoting Goethe v. N.Y. Life Ins. Co., 190 S.E. 451 (S.C.1937) (internal citations and quotations omitted).
 
 
 16
 Sitting on railroad tracks is not necessarily an unreasonably dangerous act;[2] Chambers may well have sat at the very same spot on prior occasions.[3] The record contains evidence that Chambers had a history of alcohol abuse, so he was likely no stranger to passing out after drinking. But passing out in one of the most dangerous places imaginable and getting hit by a train qualifies as an accident "according to the common speech and common usage of people generally." Id. Although he most certainly set in motion the "series of events which in connected line of causation result[ed] in [his] death"--first, by getting very drunk, and, second, by choosing what turned out to be the wrong place to rest--getting struck by the train was neither by his "design or intention."
 
 
 17
 I would reverse the summary judgment in favor of the defendant and remand for further proceedings.
 
 
 
 *
 To be a "covered loss" for accidental death, the policy provides:
 Accidental Death and Dismemberment Benefits
 Accidental Death and Dismemberment Benefits provide benefits if you suffer a Covered Loss. For benefits to be paid, you must:
 
 
 [1]
 be injured in an accident which occurs while you are insured for Accidental Death and Dismemberment Benefits
 "Covered Loss" means your loss of life or your loss of a member or members. To be a Covered Loss, the loss must be a direct result of the injuries received in an accident, independent of all other causes.
 
 
 [1]
 Of the ten numbered exclusions, only one mentions alcohol: operating a motor vehicle with a blood alcohol level of at least .15%
 
 
 [2]
 According to the coroner's report, the train engineer first noticed Chambers sitting on the tracks when the train was 750 feet away. Had Chambers not been unconscious, it is reasonable to assume that he would have had sufficient time to get off the tracks
 
 
 [3]
 The coroner's report noted that Chambers' friends had seen him sitting on the tracks at 8:00 P.M. (J.A. 114) (this should probably read 10:00 P.M., which is listed as the time that Chambers was last seen alive (J.A. 113))