OPINION OF THE COURT
Thomas A. Standee, J.
The defendant, Mutual of Omaha Insurance Company (Mutual of Omaha), submits a motion seeking an order granting summary judgment dismissing the complaint of the plaintiff, Deborah Brust (Brust). The defendant, Continental Casualty Company (Continental), also submits a motion seeking an order granting summary judgment dismissing plaintiffs complaint.
Facts
This action was commenced on October 20, 1998 seeking benefits in the sum of $25,000 under an accidental death and dismemberment policy of insurance issued by Continental and a similar policy issued by Mutual of Omaha (collectively both policies are referred to herein as The Policies). Plaintiff is the surviving spouse of Kevin Brust, who died on March 18, 1998. The policies were issued to plaintiff and covered eligible family members, defined as including the spouse of the insured.
Kevin Brust, spouse of Deborah Brust, died after being hit by a Conrail train at approximately 2:00 a.m. on March 18, 1998. Kevin Brust died on impact.
Mutual of Omaha Policy
The Mutual of Omaha Policy No. T135BAFB-149418-26M (MO Policy) provides benefits from the accidental death of the *782 insured, subject to the terms and conditions of the policy. The MO Policy contains exceptions which state the following:
“part e. exceptions
“We will not pay benefits for:
“(a) suicide or attempt thereat.”
The MO Policy also sets forth the benefits for loss of life covered:
“part h. benefits for loss of life
“When injuries received by an insured person result in loss of life within 365 days from the date of the accident, the Company will pay the amount specified below.”
“part f. definitions
“ ‘Injuries’ means accidental bodily injuries: (a) received while insured under this policy; (b) sustained in a manner described in Part G; and (c) which result, independently of sickness and all other causes, in loss covered under Part H.”
Under the general provisions of the MO Policy, there is a clause addressing intoxicants:
“part m. general provisions
“Intoxicants and Narcotics: We will not be liable for any loss sustained because of intoxication. Nor will we be liable for any loss that results from being under the influence of any narcotic. This provision does not apply to narcotics given on the advice of a physician.”
Continental Casualty Company Policy
Continental issued an accidental death and dismemberment policy, certificate No. ID22809139, effective November 1, 1997 (CCC Policy). The policy sets forth as an additional provision that “this is an accident only certificate. It does not pay benefits for losses from sickness.” This CCC Policy contains the following provisions:
“accidental death benefit
“When a covered Injury results in loss of life of an Insured Person within 365 days after the date of the accident, we will pay the Principal Sum applicable to the Insured Person.”
“definitions
“ ‘Injur/ means bodily injury caused by an accident occurring while the Insured Person’s coverage is in force and which results, directly and independently of all other causes, in loss covered by the policy in *783 the manner described in the Description of Coverage.”
“exclusions
“This Description of Coverage does not cover any loss caused by or resulting from * * *
“(5) Suicide or a suicide attempt or self-destruction or an attempt to self-destroy * * *
“(9) Alcoholic intoxication or influence of drugs unless taken as prescribed by a physician.”
Summary Judgment Motions
Both defendant insurance companies have moved for summary judgment dismissing the complaint on the ground that there is no coverage under The Policies issued to the plaintiff. The defendants rely on several provisions of The Policies to allege that the death of Kevin Brust is not covered.
A. Suicide Exception
The defendants assert that they are entitled to summary judgment as a matter of law because the official cause of death of Kevin Brust is listed as a suicide and suicide is a specified exception to payment of benefits under the accidental death insurance policies.
The autopsy report of Thomas D. Smith, M.D., Deputy Medical Examiner, County of Monroe, states the cause of death of Kevin Brust as “multiple blunt force trauma.” The manner of death listed on the autopsy report is “Suicide.” These findings of the County Medical Examiner were used on the certificate of death. Thus the certificate of death also states the immediate cause of death as massive blunt force trauma and that the manner of death is suicide. The certificate of death further states that the date of the injury was March 18, 1998 at 2:00 a.m. and the injury occurred by being struck by a train.
The police report records a statement taken at the scene of the injury from the engineer of the train, Paul Schultz:
“He saw a person sitting on the track that the train was traveling on. The person was wearing a creamed colored jacket and was sitting on the south rail track, with his feet facing north. Mr. Schultz states that he blew the train horn, the person on the track did not look up until the train was about 100 ft. from him. The person then looked at the train and then turned away. The train then struck the person.”
*784 There is also a police report related to a domestic dispute at 11:55 p.m. on March 17, 1998 involving Kevin Brust. The officer states as follows:
“Officer Clancy then came back into the kitchen and told myself and (S) [Kevin Brust] that (V) [Donna Kulijof] wanted him to leave for the night. (S) [Kevin Brust] then went into the bedroom where he got dressed. (S) [Kevin Brust] then got his shoes + jacket on and I told him that I was going to take him to his sister’s house in Fairport. (S) [Kevin Brust] said ‘OK’! And we went outside while Officer Clancy stayed behind to take a domestic report from (V). (S) [Kevin Brust] stated to me ‘Let’s go, I know the routine, I’ll be back here tomorrow.’ As I was transporting (S) [Kevin Brust] to Fairport, I asked him for directions to his sister’s and he insisted that he did not want to go there. When we were in Fairport, he told me to drop him off at a gas station, so he could call a buddy. I dropped (S) [Kevin Brust] off at the corner of Main St. + Parce Aven. (S) [Kevin Brust] was released due to the fact that the odor of alcohol was slight and that he was coherent, displaying no signs of wanting to harm himself.”
In the follow-up investigation related to the death of Kevin Brust, a report was taken by the police from Caron Alderson at approximately 7:15 p.m. on March 18, 1998. She reported that Kevin Brust had been at her home at 1:10 a.m. on March 18, 1998 knocking on her front door and windows and yelling wake up, wake up. Caron Alderson “describes him as appearing normal and smiling.” She told him to go or she would call the cops. She never opened her door or let Kevin Brust into her home. Kevin Brust left her premises.
This is a motion for summary judgment. If the plaintiff raises any issue of fact requiring a trial then summary judgment must be denied. The Medical Examiner’s only connection to Kevin Brust was to perform an autopsy. The information contained on the certificate of death was obtained from the autopsy report. The autopsy report lists the cause of death as multiple blunt force trauma and states the various trauma to the body of Kevin Brust. This report also concludes that the manner of death is suicide. However, there is no basis provided for this conclusion and no information contained in the report to draw this conclusion. The autopsy report and the certificate of death are no more than the opinion of the Medical Examiner, *785 are not conclusive on the manner of death, and are of limited probative value as to whether Kevin Brust committed suicide. (See Schelberger v Eastern Sav. Bank, 60 NY2d 506, 511 [1983].)
Both the police report of the officer who dropped off Kevin Brust in Fairport and Caron Alderson, who described Brust as appearing normal and smiling, were witnesses to the condition of Brust prior to his death. Based upon these eyewitness reports within two hours of his death, this court determines that there are questions of fact raised by the plaintiff as to whether Kevin Brust committed suicide. Further there is no testimony, reports, or indications by the Medical Examiner or any other evidence such as a suicide note, or witness testimony that support, as a matter of law, that Kevin Brust committed suicide. The plaintiff has raised a question of fact as to the manner of death. The defendants are not entitled to summary judgment based upon the exclusion for suicide in The Policies.
B. Intoxication
As an alternative basis, defendants seek summary judgment based upon the allegation that Kevin Brust was intoxicated at the time of his death, and thus his death is excluded from coverage under the accidental death insurance policies. Both of The Policies contain provisions that there is no coverage for any loss caused by, or sustained because of, intoxication.
The Mutual of Omaha policy language states “We will not be liable for any loss sustained because of intoxication. Nor will we be liable for any loss that results from being under the influence of any narcotics.” The Continental policy states that “This Description of Coverage does not cover any loss caused by or resulting from * * * (9) Alcoholic intoxication or influence of drugs.” There is no definition in either policy of “intoxication” or a clause to explain when intoxication exists.
It is a generally accepted principle that policies of insurance, drawn by the insurer, “are to be liberally construed in favor of the insured.” (Miller v Continental Ins. Co., 40 NY2d 675, 678 [1976].) *786 However, where the provisions in an insurance policy are unambiguous, the construction of such clauses is solely a question of law for the court. (Baughman v Merchants Mut. Ins. Co., 87 NY2d 589, 592 [1996]; Caporino v Travelers Ins. Co., 62 NY2d 234, 239 [1984].)
*785 “That principle is kin to the proposition that ‘[if] an exclusion of liability is intended which is not apparent from the language employed, it is the insurer’s responsibility to make such intention clearly known’ (Sperling v Great Amer. Ind. Co., 7 NY2d 442, 447; Aetna Cas. & Sur. Co. v General Cas. Co. of Amer., 285 App Div 767, 770).” (Id., at 678 [internal quotations omitted].)
*786 The language in both policies is unambiguous as to the intent that if the insured is intoxicated any loss is not covered; however, the policy language does not, as a matter of law, provide a determination of when intoxication exists.
Counsel for the insurers would have this court rely on the Vehicle and Traffic Law definition of per se intoxication being 0.10% blood alcohol content (BAG) as the legal definition for intoxication and for a showing that the loss is not covered due to the BAG of Kevin Brust.[1] (Vehicle and Traffic Law § 1192
.) Although a threshold BAG of 0.10% is appropriately used for determining driving while intoxicated under the Vehicle and Traffic Law of New York State, The Policies do not relate the term “intoxication” to the Vehicle and Traffic Law definition of per se intoxication.
Notwithstanding this fact, intoxication does have a common, everyday meaning. In fact the Vehicle and Traffic Law has a common-law definition of intoxication which provides for a subjective test of intoxication. (Vehicle and Traffic Law § 1192 .) In addition, there are other definitions of intoxication. The definition in Black’s of intoxication is as follows:
“Intoxication. Term comprehends situation where, by reason of taking intoxicants, an individual does not have the normal use of his physical or mental faculties, thus rendering him incapable of acting in the manner in which an ordinarily prudent and cautious man, in full possession of his faculties, using reasonable care, would act under like conditions.” (Black’s Law Dictionary 822 [6th ed].)
Without a definition of intoxication written in The Policies, the insurers are requesting that this court write an additional term into The Policies defining when “intoxication” exists so as to show there is no coverage under The Policies. The court cannot add terms to the insurance policies or construe language to rewrite the insurance contract. (See Town of German Flats v Aetna Cas. & Sur. Co., 174 AD2d 1003 [4th Dept 1991].) The insurers have the obligation to set forth in plain *787 and unmistakable language the terms of The Policies. In this case the court cannot as a matter of law determine there is no coverage based upon the undefined term of “intoxication.” The fact that intoxication has an unambiguous everyday or common-law meaning allows the provision in the policy to stand. A question of fact exists as to the meaning of “intoxication” and whether Kevin Brust was intoxicated under such definition.
The plaintiff has established an issue of fact. The defendants have failed to establish as a matter of law that they are entitled to summary judgment on the ground that there was no coverage because of the intoxication of Kevin Brust. The motion by the defendants for summary judgment based on there being no coverage due to the intoxication of Kevin Brust is denied.
C. Independently of All Other Causes
The defendants assert that the accidental death and dismemberment policies at issue cover only wholly and totally accidental deaths. They also assert that the policyholder has the burden of establishing that the circumstances warrant coverage under The Policies. The injuries that are covered under the Mutual of Omaha policy are defined as “accidental bodily injuries * * * which result, independently of sickness and all other causes, in loss covered under Part H [which includes death].” The definition under the Continental policy is “bodily injury caused by an accident * * * which results, directly and independently of all other causes, in loss covered by the policy.”
The Court of Appeals reviewed an insurance policy which covered loss of life “ ‘resulting directly and independently of all other causes from bodily injuries caused by accident.’ ” (Miller v Continental Ins. Co., 40 NY2d 675, 676 [1976], supra.) The Court of Appeals stated:
“[t]he multifaceted term ‘accident’ is not given a narrow, technical definition by the law. It is construed, rather, in accordance with its understanding by the average man [citations omitted], who, of course, relates it to the factual context in which it is used * * *
“Such an appreciation of the reality of things requires that the word ‘accident’ in the policy here be deemed to pertain not only to an unintentional or unexpected event which, if it occurs, will foresee-ably bring on death, but equally to an intentional or expected event which unintentionally or unexpectedly has that result.” (Miller, at 676-678.)
*788 The Court of Appeals was reviewing a case where a man died due to the injection of a fatal dose of heroin into his body. The Court asserted that “true ‘accidents’ may be rare occurrences,” because most fatalities result from negligence, recklessness or poor judgment. (Id., at 676.)
The Court of Appeals set forth criteria for assessing whether a result is accidental:
“ ‘[I]n construing whether or not a certain result is accidental, it is customary to look at the casualty from the point of view of the insured, to see whether or not, from his point of view, it was unexpected, unusual and unforeseen [citations omitted].’ ” (Miller, supra, at 675.)
The Court of Appeals also sets forth that New York law does not separate accidental means from accidental death, because such a legalistic separation would “ ‘certainly not [be] understood by the average man and he is the one for whom the policy is written’ [citations omitted].” (Id., at 678.)
Applying these principles and concepts to the facts in the instant case,[2] Kevin Brust may have intentionally ingested alcohol but the defendants have failed to demonstrate as a matter of law that he intended such actions to lead to his death. Even the police report statement of the train engineer that Kevin Brust looked up when the train whistle blew and then looked away, does not, as a matter of law, establish that his death was a result of another cause besides an unintentional or unexpected result.
The defendants rely on a Fourth Circuit United States Court of Appeals decision which addresses, after a bench trial, the lower court’s determination that the insured was not entitled to recover accidental death benefits. The lower court denied benefits because it was “concluded that death is not accidental when it is ‘a foreseeable result of [the deceased’s] voluntary act of sitting on the railroad track while intoxicated.’ ” (Simpson v Jefferson-Pilot Life Ins. Co., 37 F3d 1495 [4th Cir 1994], published in full at 1994 US App LEXIS 29101, *4, 1994 WL 567901, *1.) This interpretation was supported by the State law of South Carolina and North Carolina. The lower court held that the plaintiff could not carry the burden of proving an accidental loss. The appellate court held that the District Court’s conclusion was not clearly erroneous from the little evidence presented at trial.
*789 The lower court in Simpson (supra) and the lower court in Miller (supra) both made their determinations only after a full bench trial; not on a motion for summary judgment. The defendants in the instant case have not set forth evidence to establish, as a matter of law, that they are entitled to summary judgment that the death of Kevin Brust was not an accident. The plaintiff has raised a question of fact on whether the death was accidental, and whether such accidental death was independent of all other causes.
At the time of trial the plaintiff has the burden of demonstrating that coverage is warranted by the accidental death of Kevin Brust, which resulted independently of all other causes. The issues of coverage being denied under the policies due to suicide or intoxication must be determined by the trier of fact. After a trial the actions of Kevin Brust may lead the trier of fact to conclude that his death was not an accident; or that he committed suicide; or that he was intoxicated; so that there is no coverage under the defendants’ policies. However, at this stage in the litigation, the defendants have failed to demonstrate, as a matter of law, that they are entitled to summary judgment dismissing the plaintiff’s complaint, and plaintiff has shown issues of fact requiring a trial.
The motion by the defendants for summary judgment on the basis that Kevin Brust’s death was not an accident and because his intoxication was a contributory factor to his death, which removes any coverage from the policy, is denied.
Order
Based upon all the papers submitted in support and in opposition to these motions, upon the above decision, and after due deliberation, it is hereby ordered that the motions of the defendants, Mutual of Omaha Insurance Company and Continental Casualty Company, for summary judgment dismissing the complaint of the plaintiff, Deborah Brust, are denied.

. The autopsy toxicology report shows that Kevin Brust’s blood alcohol content was anywhere between 0.16% and 0.30% at the time of the incident.

. In the Miller case (supra), the Court of Appeals was reviewing a judgment entered at Trial Term of Supreme Court following a nonjury trial.