**Arlene HUMMEL, Plaintiff,**

**v.**

**CONTINENTAL CASUALTY INSURANCE COMPANY, an Illinois Corporation, Respondents.**

**No. CV–S–01–0350–LRH–RJJ.**

United States District Court, D. Nevada.

March 20, 2003.

Steven J. Parsons, Steven J. Parsons, Law Office Of, Las Vegas, for Hummel, Arlene, Plaintiff.

John E. Gormley, Rawlings, Olson, Cannon, Gormley & Desruisseaux, Las Vegas, for Continental Casualty Company, Defendant.

## ORDER

HICKS, District Judge.

Before the Court is Defendant Continental Casualty Insurance Company's (Continental) motion for summary judgment (# 14), filed August 8, 2002. Plaintiff Arlene Hummel filed an opposition and counter-motion for partial summary judgment (# 16 & 17), on August 27, 2002. Continental replied on September 10, 2002. Upon review of the evidence presented and the memoranda of the parties, the Court makes the following disposition.

## I. Factual and Procedural Background

Erica Hummel, the Plaintiff's daughter, was insured under an accidental death/dismemberment policy issued to her by Defendant Continental Casualty Insurance Company (Continental). The policy became effective on April 1, 1999. Continental issued the policy to Financial Services Association (FSA) as the "holder" insuring eligible customers of Bank of America, the "participating group." (Mot. Sum. J., Ex. C; Reply, Ex. C). Because Erica was an account-holder at Bank of America, a participating institution, she was entitled to purchase the insurance and upon doing so, designated the Plaintiff as the beneficiary.

In late November of 1999, Erica's physician proscribed her Oxycodone, a strong pain killer to alleviate her migraine headaches. Unfortunately, on December 5, 1999, Erica was found dead in her apartment. (Mot.Sum. J., Ex. A). According to the Coroner's report, the investigator uncovered an empty pill bottle for Oxycodone at the bottom of the trash-can in her bathroom, covered by debris. *Id.* Erica was prescribed sixty pills on November 29, 1999, to be taken twice a day as needed. *Id.* Because six days had passed from the date of the prescription to Erica's death, if Erica had taken the Oxycodone twice daily, the prescription bottle should have contained forty-eight pills. *Id.* Ultimately,

Erica's death certificate listed the cause of death to be Oxycodone poisoning. (Mot. Sum. J., Ex. B).

Plaintiff, Erica's mother and the beneficiary of her policy, then made a demand to Continental to collect the death benefit. Continental refused Plaintiff's demand, pointing to an exclusion in the policy which denied coverage "for any loss caused by or resulting from ... (8) alcoholic intoxication or influence of drugs *unless taken as prescribed by a physician* ...." (Mot.Sum. J., Ex. B) (emphasis added). Continental contends that because the Coroner's Report clearly demonstrated that Erica did not take the pain reliever "as prescribed by a physician," Plaintiff was not entitled to the policy proceeds as the beneficiary.

On March 29, 2001, the Plaintiff filed the instant action, claiming breach of contract, breach of the covenant of good faith and fair dealing, and breach of statutory duties imposed on insurers by Nev.Rev.Stat. 686A *et seq.* The Plaintiff also requests punitive damages.

## II. Analysis

On August 8, 2002, Continental moved for summary judgment claiming the facts of the case are not in dispute and that it is entitled to judgment as a matter of law. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *County of Tuolumne v. Sonora*

*Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001).

The initial burden rests on the moving party to point out the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is " 'sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.' " *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986). *See Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D.Cal.2001). For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Catrett*, 477 U.S. at 325, 106 S.Ct. 2548.

In responding to a summary judgment motion, the non-moving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 249, 106 S.Ct. 2505. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252, 106 S.Ct. 2505.

Continental argues that its policy is governed by Nev.Rev.Stat. 689B *et. seq.*, which applies to group health insurance and blanket accident and health insurance

contracts. *See* Nev.Rev.Stat. 698B.010(2). If Continental is correct, nothing in the Group Insurance chapter of Nevada's Insurance Code negatively affects the exclusion at issue, and Continental has the right to exclude coverage based on Erica's failure to take the Oxycodone as prescribed by her physician.

The Plaintiff counters that the policy at issue should be construed as a franchise policy which would be governed by Nev.Rev.Stat. 689A *et. seq.* This section of the Insurance Code governs individual policies. Section 689A.280 allows an insurance policy to include an "Intoxicants and Narcotics" exclusion, as long as the language of the exclusion parallels precisely the language of the statute. Plaintiff claims that the exclusion in Erica's policy is less favorable to the insured than its statutory counterpart, and thus should be automatically amended to include the statutory language.

The exclusion in Erica's policy and the statutory language are similar with the exception of the final clause. Specifically, the Continental policy provides coverage for loss, even if the loss resulted from intoxication or drug use, as long as the drug was "taken as prescribed by a physician." By contrast, the statute would deny coverage unless the medication was "administered on the advice of a physician." Nev.Rev.Stat. 689A.280. Plaintiff claims the two clauses, "taken as prescribed by" and "administered on the advice of" are not synonymous.

**A.  Group vs.  Franchise**

The Plaintiff's claims turn on whether the policy is a group policy governed by 689B or a franchise policy governed by 689A. If it is the former, the exclusion in the policy is operative as it unambiguously excepts from coverage losses resulting from an insured's failure to take medication as prescribed. On the other hand,

if the policy is re-classified as the latter, a franchise policy, 689A applies and the Court is faced with determining whether the statutory clause "unless administered on the advice of" has a different meaning than the term "taken as prescribed by."

The Nevada Supreme Court has endorsed the practice of re-classifying group policies as franchise policies when the circumstances so require. *See Daniels v. National Home Life Assurance Co.,* 747 P.2d 897, 899 (Nev.1987) (per curiam) (citing J. Appleman, *Insurance Law and Practice,* § 54 (1981)). In *Daniels,* the insured, a veteran and retired postal worker applied for insurance in response to a nationally broadcast television commercial advertising low life insurance to qualified veterans of the United States armed forces. *Id.* at 898. After approval, the insurance company sent Mr. Daniels a certificate indicating coverage under a group term life insurance policy. *Id.* The master policy was delivered to the policyholder, United Missouri Bank of Kansas City, N.A., Trustee for the Veterans Group Insurance Trust. *Id.* at 898. After a dispute arose over coverage, the state court was forced to decide whether the policy at issue was in fact true group coverage, or was actually a form of coverage known as "franchise insurance." *Id.* at 899. The trial court found the policy to be group coverage, and granted summary judgment in favor of the insurer. *Id.* In reversing the trial court and finding the policy to be "franchise insurance," the supreme court held that veterans of the United States armed forces is too diverse a group, and that true group policies usually involve "employees of a single employer, or a recognized professional organization such as

the American Dental Association." *Id.* The court's decision was also based on the fact that without an employer or an organization akin to an employer, there was no buffer to prevent "overreaching by the insurer . . . ." *Id.*

■ The determination as to the proper classification of Erica's insurance coverage is a question of law for the Court. *See e.g., Gudnason v. Life Ins. Co. No. America,* 231 Va. 197, 343 S.E.2d 54, 58–59 (1986) (classification of insurance policy as either life insurance or accident and sickness insurance was legal question to be resolved by the court). Accordingly, the Court finds the insurance in this case more closely resembles the insurance at issue in *Daniels,* rather than a typical group policy provided by an employer. While Erica may have been an employee of Bank of America, she was offered the insurance not because of her employment status, but because of her status as an account-holder of a participating institution. Like veterans of the armed services, account-holders of "participating institutions" constitute an incredibly diverse group. Moreover, Continental has made no showing through affidavit or deposition that FSA provided any sort of buffer between Continental and its insureds, as would be the case with an employer. FSA's Constitution and Bylaws are insufficient evidence of FSA's participation in the procurement and continued administration of the accidental death and dismemberment insurance to convince the Court that Erica's policy is standard group insurance. Based on the evidence presented, the Court finds the insurance at issue is most appropriately described as "franchise insurance," and therefore, is governed by chapter 689A.[1]

---

1. The parties quibble over whether the insurance in this case meets the definition of group health insurance as defined by Nev.Rev.Stat. 689B.020(1). This section defines "group health insurance" to be "that form of health insurance covering groups of two or more persons, formed for a purpose other than obtaining insurance." The Plaintiff submits that FSA was submitted solely for the purpose of obtaining insurance, and therefore, the pol-

## B. Contract Language vs. Statutory Language

Plaintiff contends that three statutes in chapter 689A work together to provide her coverage in this case. Section 689A.280 states that "[t]here may be a provision [in the policy] as follows: ... The insurer is not liable for any loss sustained or contracted in consequence of the insured's being intoxicated or under the influence of any narcotic unless administered on the advice of a physician." But, pursuant to section 689A.180 such a provision may not be used unless the insurance policy contains the exact same language, "except that the insurer may, at its option, use in lieu of any such provision a corresponding provision of different wording approved by the commissioner which is not less favorable in any respect to the insured or the beneficiary."[2] Finally, if the contract language conflicts with "any provision of this chapter, the rights, duties and obligations of the insurer, the insured and the beneficiary shall be governed by the provisions of this chapter." Nev.Rev.Stat. 689A.340(2). Thus, the Nevada Legislature has made a statutory determination on the limits of an Intoxicant and Narcotics exclusion in an insurance policy issued in Nevada.

As a result of the intent of the Legislature, if the Intoxicants and Narcotics exclusion in the subject policy is less favorable to the insured, it should be amended to include the language in section 689A.280, which Plaintiff claims excludes coverage only if the injury results from medications not prescribed by a physician to the insured. Accordingly, Continental breached the contract only if the Plaintiff's interpretation of the language "administered on the advice of" is the version intended by the Nevada Legislature. Therefore, the Court must analyze both the clauses "taken as prescribed by" and "administered on the advice of," to determine whether they conflict or are in fact synonymous.

### i. "taken as prescribed by"

With respect to "taken as prescribed by," the Court must look to contract principles and must apply state law-in this case Nevada law-in construing the insurance policy. *See Fortis Benefits Ins. Co. v. Johnson*, 966 F.Supp. 987, 989 (D.Nev. 1997). When contract language is clear and unambiguous, the plain meaning of the contract should not be distorted. *See Watson v. Watson*, 95 Nev. 495, 596 P.2d 507, 508 (1979). However, the determination as to whether the language is ambiguous or unambiguous is ultimately a question of law. *Capitol Indemnity Corp. v. Blazer*, 51 F.Supp.2d 1080, 1084 (D.Nev.1999).

As a matter of law, the Court finds "taken as prescribed by" to be unambiguous language, requiring Erica to follow all prescribing instructions associated with her prescription. The Plaintiff impliedly concedes that Erica did not follow the prescribing instructions when she states that Erica "accidentally [took] too much of a medication prescribed to her by her doctor." (Opp'n. p. 2, ln.22–23). Nor did Continental claim Erica's death was anything but an accident. Therefore, unless the clause "administered on the advice of" is ambiguous, and the interpretation intended by the Nevada Legislature makes

icy in question does not fall within Nevada's definition of "group health insurance." Whether the insurance in this case meets Nevada's statutory definition is, however, irrelevant. The question before the Court is not whether Erica's plan was "group" insurance, but rather, whether the plan was "true group" insurance.

2. Neither party has made any showing as to whether the language in section 689A.280 was approved by the insurance commissioner.

the clause "taken as prescribed by" less favorable to the insured, the insurance policy cannot be amended, and Continental did not breach the contract.

### ii. "administered on the advice of"

■ While numerous states have included the clause "administered on the advice of" in their respective state insurance codes regulating Intoxicants and Narcotics exclusions, it does not appear that other courts have analyzed the clause to determine its proper interpretation. The parties' briefs demonstrate the dearth of case law on this issue. The authority Continental cites is inapposite, see *Giangreco v. United States Life Insurance Co.*, 168 F.Supp.2d 417 (E.D.Pa.2001), and *Brust v. Mutual of Omaha Ins. Co.*, 187 Misc.2d 780, 724 N.Y.S.2d 254 (2000), while the Plaintiff fails to cite any authority on the subject. Nor do the parties attempt to analyze the nature of "administered on the advice of" within a statutory interpretation framework. Nevertheless, the application of the Insurance Code to the exclusionary language is a matter of law and must be decided by the Court. See *Haworth v. Lira*, 232 Cal.App.3d 1362, 1367, 284 Cal. Rptr. 62 (Cal.Ct.App.1991).

Despite the scant analysis, the Court is aware of the parties' arguments regarding the two exclusion clauses. Continental argues that "administered on the advice of" has an identical meaning to the clause "taken as prescribed by," while Plaintiff argues that "taken as prescribed by" is actually more strict, and as a result, less advantageous to the insured. Thus, the issue becomes whether the statute is capable of two reasonable, but inconsistent interpretations. If so, the statute is ambiguous and the Court "must determine what the legislature intended by its enactment." *Gallagher v. City of Las Vegas*, 114 Nev. 595, 959 P.2d 519, 521 (1998) (per curiam) (citing *McKay v. Bd. of Supervisors*, 102 Nev. 644, 730 P.2d 438, 442 (1986)).

The Court concludes that "administered on the advice of" is ambiguous, especially when one compares the two clauses. "Taken as prescribed by" makes it clear that any medication must be taken according to the dosage prescribed. Neither party disputes this interpretation. The plain language of "administered on the advice of" on the other hand, can and does in fact lead to differing results. The word administered for example has a number of definitions, one of which is "to give remedially." *Webster's New International Dictionary* 27 (3rd ed.1986). Under this definition, administered could mean given on the advice of a physician and would not necessarily include the dosage advised by the physician. The language as written in the statute does not have the limiting effect that "taken as prescribed by" does. If the statutory language "administered on the advice of" actually read "administered as advised by," the two clauses might be synonymous, but of course, this is not the case. "Taken as prescribed by" focuses more upon the acts of the insured, while "administered on the advice of" focuses more upon the acts of the physician.

■ The Court is satisfied that the Plaintiff's interpretation is just as reasonable as Continental's. At the least, the clause "administered on the advice of" is ambiguous and susceptible to differing interpretations. To determine which interpretation is ultimately correct, however, the Court must "examine the context and spirit of the statute in question, together with the subject matter and policy involved." *Gallagher*, 959 P.2d at 521. Any "interpretation should be in line with what reason and public policy would indicate the legislature intended, and should avoid absurd results." *Id.*

The general purposes behind Nevada's Insurance Code include "protecting those with interests under insurance policies, in-

suring that policyholders, claims and insurers are treated fairly and equitably, and preventing misleading, unfair and monopolistic practices in insurance operations." *Daniels*, 747 P.2d at 899 (citing Nev.Rev. Stat. 679A.140). The Insurance Code also states that it should "be reasonably and liberally construed to fulfill these purposes." *Id.* (citing Nev.Rev.Stat. 679A.140(2)).

The specific purpose of section 689A.180 is in line with the general purposes of the Insurance Code, as section 689A.180 specifically directs that if an insurance policy contains a provision like the one at issue in this case, it cannot be less favorable to the insured or the beneficiary than the required language of the statute. If the provision in an insurance contract is in fact less favorable, creating a conflict with the statute, the provision is governed by the statutory requirements regardless of the language in the contract. *See* Nev.Rev. Stat. 689A.340(2). This scheme as codified clearly evidences a legislative concern for the insured's protection.

In light of the policy behind the statute, and the possibilities relating to the definition of "administered on the advice of," the Court finds that the Plaintiff's interpretation of "administered on the advice of" parallels what the Legislature intended in enacting the statute. "Taken as prescribed by" is a much stricter standard than "administered on the advice of;" it requires exact adherence to the instructed dosages, whereas "administered on the advice of" does not. This interpretation of the clause "administered on the advice of" is more in line with the policy behind the statute, namely, protecting insureds. Nor does it achieve the absurd results that Continental asserts, specifically, that Nevada's insurance law would allow an insured to take unlimited quantities of prescribed medications and still be afforded coverage under the policy as insurance companies are not without means to protect themselves from risks arising from intentional overdoses. Moreover, contrary to Continental's position, it is the clause "taken as prescribed by" that could very well lead to absurd results. For instance, if Erica had taken three Oxycodone pills in one day as opposed to two, and suffered some unforeseen negative reaction resulting from the additional medication, which in turn resulted in injury or loss, Continental would be free to deny her coverage based on her failure to adhere strictly to her physicians instructions. Continental's ability to deny coverage under such circumstances would thwart the public policy of protecting insureds against overreaching insurance companies and lead to truly absurd results.

■ It is more reasonable to assume that the purpose of the statute's language was to prevent the exclusion from applying in cases where the consumption of the drug or narcotic was itself an illegal act. Accordingly, the Court finds the reasonable and appropriate construction of the term "administered on the advice of" to include Erica's situation where her physician gave her a prescription of Oxycodone to relieve her migraines. Given this finding, the Court will amend the exclusion in Erica's policy as required by Nev.Rev.Stat. 689A.340 to include the term "administered on the advice of." *See Olson v. American Bankers Ins. Co.*, 30 Cal. App.4th 816, 827–28, 35 Cal.Rptr.2d 897 (Cal.Ct.App.1994) (court amended contract to conform to statutory language). Because there is no dispute that Erica's physician prescribed her Oxycodone, Continental breached the insurance contract by denying coverage. Consequently, the Plaintiff as beneficiary is entitled to recover the death benefits provided under Continental's policy.

## C. Bad Faith

■ Continental also requests summary judgment as to Plaintiff's common law and statutory bad faith claims claiming there is no evidence that it breached its duties to the Plaintiff. Nevada law does recognize a common law duty of good faith and fair dealing in every contract. *See Pemberton v. Farmers Ins. Exchange,* 109 Nev. 789, 858 P.2d 380, 382 (1993). A breach or failure to perform this duty constitutes bad faith "when the relationship between the parties is that of insurer and insured." *Id.* If an insurer refuses "without proper cause" to compensate an insured for a loss covered by the policy, the insurer acts in bad faith. *See id.* However, where an insurer's refusal to pay insurance benefits is based on a reasonable interpretation of the insurance contract, there is no basis for concluding that the insurer acted in bad faith. *See American Excess Ins. Co. v. MGM Grand Hotels,* 102 Nev. 601, 729 P.2d 1352, 1354–55 (1986). Because the Court finds that "administered on the advice of" is an ambiguous statute, susceptible to two reasonable interpretations, one of which is the interpretation proposed by Continental, and because this is a case of first impression in Nevada, as a matter of law, Continental cannot be liable for bad faith.[3] There also has been no evidence presented by Plaintiff that Continental knew or had reason to know that its policy was likely to be classified as a franchise policy under Nevada insurance law or that the "administered on the advice of" language would likely be read into its policy. Consequently, insufficient evidence has been presented to the Court that Continental acted without proper cause when it denied Plaintiff's claim.

Similarly, Continental cannot be liable for a violation of Nevada's Unfair Insurance Practices Act, Nev.Rev.Stat. 686A.010, et seq., Plaintiff's third claim for relief. Section 686A.310 designates certain insurance company activities to be unfair practices and by implication permits a private right of action by an insured against an insurer for violation of the statute. *See Hart v. Prudential Property and Casualty Ins. Co.,* 848 F.Supp. 900, 903 (D.Nev.1994). While Plaintiff requests partial summary judgment as to her unfair practices claim, she fails to cite which of the sixteen delineated unfair practices Continental engaged in. Plaintiff does argue that Continental deliberately failed to train its personnel as to applicable Nevada law and encouraged its employees to "deny claims and then plead[ ] ignorance when called to account." (Opp'n, p. 11, ln.19–20). After reviewing the statute and Plaintiff's brief, subsection (e) is the only applicable unfair practice that could support Plaintiff's claim. Nev.Rev.Stat. 686.310(1)(e) makes "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear," an unfair practice in violation of the statute. Because Continental's interpretation of the contract and the statute was at least nominally reasonable under the circumstances and liability never became reasonably clear, Continental cannot be held liable for a violation of this chapter as a matter of law.

IT IS THEREFORE ORDERED that Continental's motion for summary judgment (# 14) is DENIED as to Plaintiff's claim for breach of contract, but GRANTED as to Plaintiff's second and third claims for relief.

---

**3.** Although the ambiguous statute is not a part of the contract itself, Continental interpreted the contractual language in light of the applicable statute, and made its determination.

Thus, Continental's interpretation necessarily involved review of both the contract and the statute.

IT IS FURTHER ORDERED that the Plaintiff's motion for partial summary judgment (# 17) as to her breach of contract claim is GRANTED.

Within ten (10) days from the entry of judgment herein, the Plaintiff shall submit a proposed judgment in the amount of the death benefit plus pre-judgment interest authorized by Nevada law, and serve the same upon Defendant. The Defendant shall have five (5) days to object to the form of the Judgment and to propose an alternate form of judgment. Plaintiff shall also be entitled to recovery of costs pursuant to Fed.R.Civ.P. 54(d).

IT IS SO ORDERED.